**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Hector Jesus HERNANDEZ, aka: Mauricio Solis, Defendant–Appellant.**

**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Jorge Walter CARDONA,**
**Defendant–Appellant.**

**Nos. 88–5259,\* 88–5265.**

United States Court of Appeals,
Ninth Circuit.

Submitted March 7, 1989 (No. 88–5259).

Argued and Submitted March 7,
1989 (No. 88–5265).

Decided May 31, 1989.

---

\* The panel finds this case appropriate for submission without argument pursuant to 9th Cir.R. 34–4 and Fed.R.App.P. 34(a).

Michael J. Treman, Santa Barbara, Cal., and John P. Martin, Deputy Federal Public Defender, Los Angeles, Cal., for defendants-appellants.

Stephen G. Wolfe, Asst. U.S. Atty., Major Narcotics Section, Los Angeles, Cal., for plaintiff-appellee.

Before SNEED, FARRIS and PREGERSON, Circuit Judges.

SNEED, Circuit Judge:

Hernandez and Cardona appeal their convictions for conspiracy to possess and possession with intent to distribute cocaine. They argue (1) that the evidence is insufficient to prove the existence of a conspiracy; and (2) that there was insufficient evidence to support a finding of constructive possession. Hernandez also contends that the district court abused its discretion in refusing to admit allegedly exculpatory evidence. We affirm.

## I.

## FACTS AND PROCEEDINGS BELOW

FBI Agent Guerrero, acting undercover began negotiating the sale of cocaine from codefendant Montilla. *See United States v. Montilla*, 870 F.2d 549, 550–51 (9th Cir. 1989). Guerrero met with Montilla several times beginning in early September 1987. Montilla told Guerrero that her boyfriend "Hector," would help her and that she and Hector were in charge of the transaction. On September 17, Guerrero met Hernandez who was introduced as Hector. The two men discussed the details of the exchange of cash and cocaine. Guerrero had several other meetings with Montilla and Hernandez. Some of these conversations were recorded. The transcripts of these conversations were introduced into evidence. On September 21, the three met again to discuss the specifics of the exchange.

Montilla called Guerrero again on September 22 and told him that neither Hernandez nor his suppliers wanted to complete the deal. Montilla told Guerrero that she would find another supplier. On September 23, Montilla and Hernandez introduced Guerrero to Gonzalez. Gonzalez and

Guerrero discussed a possible sale. Gonzalez asked Guerrero for his beeper number.

After this meeting, Montilla became concerned that Gonzalez was trying to cut her out of the transaction. Guerrero assured Montilla that he would only deal with her and not directly with Gonzalez. The next day, she called Guerrero again to assure him that she was looking for another supplier. On September 29, Montilla indicated that she had found a new supplier. Guerrero and Montilla had several more conversations in early October. Finally, October 6 was set as the date of the transaction.

On October 6, Montilla and Guerrero spoke at 3:15 p.m.; Montilla said she was waiting for the cocaine. Shortly after 4:00, an officer outside Montilla's apartment saw codefendants Cubero and Cardona arrive in a car that Cubero was driving. The officer saw them walk to the trunk of the car and then to Montilla's apartment. Ten to twenty minutes later, Cubero returned to the car, took a duffle bag from the trunk and carried it to the apartment. The observing officer believed the duffle bag was heavy. Between 4:20 and 4:30, the heretofore reluctant Hernandez arrived and entered the apartment. At 4:36, Montilla called Guerrero and said the "merchandise" had arrived and was ready for delivery.

Fifteen to twenty minutes later (shortly after 5:00), Cubero and Cardona left. Cardona was carrying two jackets; one rolled up and tucked beneath his arm, the other laid across his arm. He put the jackets in the car and both men left. Shortly thereafter, Hernandez also left. Between 5:30 and 6:00, all three returned to Montilla's apartment. At 6:45 all four defendants left together. Montilla carried a shoulder bag to her truck and left. Hernandez, Cubero, and Cardona got into their respective cars and drove away.

At 7:15, Guerrero met Montilla at a restaurant parking lot. Guerrero, with Montilla as his passenger, drove to a residential street where her truck was parked. Guerrero parked behind Montilla's truck and noticed Cubero and Cardona parked on

the opposite side of the street. Guerrero asked Montilla who the men were. Montilla responded: "To tell you the truth, the kid is the owner. There in the car." Guerrero asked: "In which car?" Montilla: "Those that you're looking at." Guerrero testified that he understood Montilla to say that both men owned the cocaine. Two other officers spotted Hernandez on the same street.

The sale was consummated and, after a prearranged arrest signal, officers arrested Montilla, Cubero, and Cardona. Hernandez had apparently fled, but was arrested later in the evening. Five kilograms of cocaine were found in Montilla's shoulder bag. A search of the car in which Cubero and Cardona were arrested turned up the jackets Cardona carried from Montilla's apartment. Several packets of currency, totaling $12,940, were found in the jackets.

Agents then returned to Montilla's apartment and searched it. They found the duffle bag Cubero had carried into the apartment with five kilograms of cocaine in the bedroom closet. Montilla's apartment had one bedroom. The closet in the bedroom had both men's and women's clothing in it. On the dresser, police found several letters to Hernandez at that address.

Cardona did not present any evidence at trial. To exculpate himself, Hernandez testified that Montilla requested his help in setting up the first cocaine deal; that he complied by introducing Montilla to Gonzalez as the supplier; that he knew nothing about the October 6 transaction; and that he did not park on the same street as Montilla. He admitted being at Montilla's apartment with the other three defendants but said cocaine was never mentioned. Hernandez also testified that during the week, he lived at Montilla's apartment and had clothes in the bedroom closet.

The defendants were charged in a four count indictment. The first count charged Montilla, Hernandez, and Gonzalez with conspiracy to possess cocaine with intent to distribute on September 23, 1987.[1] (Hernandez did not appeal this conviction.) *See*

1. Gonzalez was never arrested and remains a fugitive.

21 U.S.C. § 846 (1982). Count two charged Montilla, Hernandez, Cardona, and Cubero with conspiracy to possess cocaine with intent to distribute on October 6, 1987. Count three charged these same defendants with possession of 10,006.6 grams of cocaine with intent to distribute. *See* 21 U.S.C. § 841(a)(1) (1982). The fourth count charged Montilla with possession of approximately $30,000 in counterfeit securities. *See* 18 U.S.C. § 472 (1982).

On June 3, 1988, a jury convicted Hernandez of count one, and Hernandez, Cardona, and Cubero of counts two and three. (Montilla pleaded guilty before trial.) Hernandez was sentenced to fifteen years on count three and five years on counts one and two, all sentences to run concurrently. Hernandez was also sentenced to a five year special parole term and given a special assessment of $150. Hernandez does not appeal his count one conviction. Cardona was sentenced to ten years on both counts two and three, to run concurrently.

## II.

## JURISDICTION

The district court had jurisdiction under 18 U.S.C. § 3231 (1982). This court's jurisdiction rests on 28 U.S.C. § 1291 (1982).

## III.

## STANDARD OF REVIEW

In reviewing the sufficiency of the evidence, this court must determine "whether a reasonable jury, after viewing the evidence in the light most favorable to the government, could have found the defendants guilty beyond a reasonable doubt of each essential element of the crime charged." *United States v. Douglass,* 780 F.2d 1472, 1476 (9th Cir.1986). A district court's admission of evidence is reviewed for abuse of discretion. *United States v. Gwaltney,* 790 F.2d 1378, 1382 (9th Cir. 1986), *cert. denied,* 479 U.S. 1104, 107 S.Ct. 1337, 94 L.Ed.2d 187 (1987).

## IV.

## HERNANDEZ' APPEAL

### A. *Sufficiency of the Evidence—Conspiracy*

■ Hernandez argues that the evidence is insufficient to support his count two conspiracy conviction because there was no evidence of an agreement among the coconspirators. The government responds that Hernandez has waived any error because he failed to raise this argument in his motion for acquittal. *See* Fed.R.Crim.P. 29.

We agree. Hernandez filed a motion for acquittal on count three but not count two. He, therefore, waived any error. *See United States v. Roberts,* 845 F.2d 226, 229 (9th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 121, 102 L.Ed.2d 95 (1988); *United States v. Curtis,* 568 F.2d 643, 647 (9th Cir.1978); *United States v. Czaplicki,* 446 F.2d 640 (9th Cir.1971) (per curiam).

On occasion, this court has reviewed "waived" sufficiency of the evidence arguments under the plain error standard. *See United States v. Rone,* 598 F.2d 564, 572–73 (9th Cir.1979), *cert. denied,* 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 780 (1980); *United States v. Durcan,* 539 F.2d 29, 31 (9th Cir.1976). " 'A plain error is a highly prejudicial error affecting substantial rights.' " *United States v. Bustillo,* 789 F.2d 1364, 1367 (9th Cir.1986) (quoting *United States v. Giese,* 597 F.2d 1170, 1199 (9th Cir.), *cert. denied,* 444 U.S. 979, 100 S.Ct. 480, 62 L.Ed.2d 405 (1979)). We shall so review Hernandez' sufficiency of the evidence claim.

■ To prove a conspiracy, the government must show (1) an agreement (2) to engage in criminal activity and (3) one or more overt acts in furtherance of the conspiracy. *See United States v. Monroe,* 552 F.2d 860, 862 (9th Cir.), *cert. denied,* 431 U.S. 972, 97 S.Ct. 2936, 53 L.Ed.2d 1069 (1977). "The prosecution need not show the agreement to have been explicit. An implicit agreement may be inferred from the facts and circumstances of the case." *Id.*

■ There is more than enough evidence to support Hernandez' conviction. The coordinated actions of the codefendants are strong circumstantial evidence of an agreement. The likelihood that these actions were not driven by an agreement is extremely remote. Hernandez' assertion that the cocaine sale was not discussed at Montilla's apartment is implausible. After all the defendants arrived, Montilla telephoned Guerrero and told him the cocaine was ready for delivery. The cocaine was also divided in two parts. Finally, there was evidence that Hernandez was present during the transaction. The jury was entitled to disbelieve his testimony to the contrary. *See United States v. Goode,* 814 F.2d 1353, 1356 (9th Cir.1987). Hernandez also admitted that he knew Montilla was arranging a cocaine sale. There is no plain error.

### B. *Sufficiency of the Evidence—Possession*

■ Hernandez' contention that there was insufficient evidence to prove that he possessed the cocaine is slightly stronger. Both parties concede that there was no evidence of actual possession; therefore, his conviction must rest on a theory of constructive possession.

To prove constructive possession, the defendant must have "sufficient dominion and control to give him the power of disposal.... Possession and knowledge can be established by circumstantial evidence.... 'Mere proximity to contraband, presence on property where it is found and association with a person or persons having control of it are all insufficient to establish constructive possession.'" *United States v. Castillo,* 866 F.2d 1071, 1086 (9th Cir. 1989) (quoting *United States v. Rodriguez,* 761 F.2d 1339, 1341 (9th Cir.1985)) (citations omitted). Constructive possession can be proved "by the defendant's participation in a 'joint venture' to possess a controlled substance." *United States v. Disla,* 805 F.2d 1340, 1350 (9th Cir.1986) (quoting *United States v. Valentin,* 569 F.2d 1069, 1071 (9th Cir.1978)).

In particular, Hernandez argues that the evidence is insufficient to establish that he had dominion and control over the cocaine. He says there was no evidence that he ever possessed the duffle bag or the shoulder bag containing the cocaine. He also points to Montilla's statement that the cocaine belonged to Cardona and Cubero as conclusive evidence that he did not have dominion and control over the cocaine.

The coordinated activity among the defendants raises a reasonable inference of a joint venture, particularly in light of the evidence of Hernandez' relationship with Montilla. *Cf. United States v. Moreno,* 649 F.2d 309, 313 (5th Cir. Unit A 1981) (evidence of constructive possession sufficient when evidence showed that the defendant "enjoyed a close and continuous working relationship with those ... who may have had actual physical possession of the marijuana"). Hernandez' admitted possessory interest in the apartment also raises an inference of constructive possession. *See Castillo,* 866 F.2d at 1088. There was sufficient evidence to support the jury's verdict.

### C. *Admission of Evidence*

■ Hernandez attempted to prove his innocence of counts two and three by arguing that Montilla found another source for the October 6 transaction. The evidence does suggest that the parties may have sought to create this impression. Hernandez wanted to introduce a police report that recounted a sale of cocaine by an unnamed black man to Montilla on August 21, 1987. Hernandez contends that this evidence shows that Montilla had an independent cocaine source, therefore supporting his theory of the case. The district court excluded the evidence on the grounds that it was cumulative and collateral.

In reviewing the trial court's admission of evidence, this court will reverse the defendant's conviction for abuse of discretion and then only if the "evidentiary error would have more likely than not affected the verdict." *United States v. Faust,* 850 F.2d 575, 585 (9th Cir.1988). The district court did not abuse its discretion in excluding this evidence. There was substantial evidence that Montilla had been trafficking

drugs for a long time and that she had connections in the trade through her father and brother. Hernandez did not need the police report to argue his theory of the case to the jury. In addition, the circumstances of the transaction recounted in the police report suggested that the quantity involved in the sale was not large. The police report indicated that Montilla handed the seller a packet of bills which the latter put in his pants pocket. The drugs were exchanged through a car window. This was not a large transaction and was not comparable to the one involved in this case. There was evidence supporting Hernandez' theory of the case and this particular transaction provided little support for that theory.

## V.

### CARDONA'S APPEAL

A. *Sufficiency of the Evidence—Conspiracy*

■ Cardona also contends that there is insufficient evidence to link him to the conspiracy. He argues that the meetings with the other codefendants and carrying the currency from Montilla's apartment to the car do not show any participation or connection with it. He argues, in substance, "mere presence."

There must be sufficient evidence to establish a defendant's connection to the conspiracy beyond a reasonable doubt. If the government proves the existence of a conspiracy, the defendants need only have a slight connection to it. *United States v. Penagos,* 823 F.2d 346, 348 (9th Cir.1987). "While mere proximity to the scene of illicit activity is not sufficient to establish involvement in a conspiracy, a defendant's presence may support such an inference when viewed in context with other evidence." *Id.*

These are difficult cases. The proof always leaves open the opportunity to argue "mere presence." Cardona relies on *Penagos* and *United States v. Cloughessy,* 572 F.2d 190 (9th Cir.1977) (per curiam), to support his position. In *Penagos* this court reversed the defendant's conviction for con-

spiracy to possess cocaine with intent to distribute. The possibility that the defendant was merely present can become sufficiently strong to warrant reversal. *Penagos* was seen with two coconspirators in the apartment complex where all three men lived. As two codefendants put a cardboard box containing cocaine into the trunk of a car, Penagos stood nearby looking up and down the street. A codefendant left and completed the sale to an undercover narcotics officer. But Penagos remained at the apartment complex. Later, another cardboard box containing cocaine was placed in a codefendant's car. The codefendant drove his car to a restaurant with Penagos as his passenger. Then, Penagos, a codefendant, and another man stayed at the restaurant for a short time and drove to a gas station next door. One of the codefendants retrieved a bag from the bathroom, later found to contain cocaine. 823 F.2d at 347–48. This evidence was insufficient to establish Penagos' connection with the conspiracy. The possibility that Penagos was merely present was not unreasonable.

*Penagos* does not support Cardona's argument. Counter-surveillance activity can further a conspiracy. *See id.* at 348. In *Penagos* this was insufficient because the defendant acted as a look out only during the loading of the vehicle. "[D]efendant's alleged counter-surveillance activities did not occur ... at meetings between buyers and sellers and during actual transfer of drugs to buyers." *Id.* at 349. Here, by contrast, Cardona's counter-surveillance activities occurred precisely at this point. Cardona, unlike Penagos, was also present during several meetings among the codefendants. Finally, in *Penagos* this court, in distinguishing Penagos from other codefendants noted that he "did not follow [the coconspirators] separately to points of delivery...." *Id.* This is exactly what Cardona did.

*Cloughessy* is even of less help. There the defendant drove two acquaintances to a meeting with DEA agents. During the meeting, Cloughessy left the car and remained in a nearby restaurant. Cloughes-

sy also remained in the car during another meeting in a hotel room. During this meeting, one agent left the room to get money for the purchase. Cloughessy followed him to the office and returned. 572 F.2d at 190–91. This court held that there was insufficient evidence to link Cloughessy to the conspiracy. We concluded that the circumstantial evidence in this case showed nothing more than mere presence or "mere casual association." *Id.* at 191. Whatever his true role, no more than "mere presence" was shown.

Cardona's watchful presence at the drug sale pushes this case away from *Cloughessy*. Cardona's presence at Montilla's apartment when the cocaine was divided provides a further distinguishing feature. Finally, Montilla's admission that Cardona and Cubero owned the drug is also admissible against him. A rational jury could conclude that Cardona had more than a slight connection with the conspiracy.

B. *Sufficiency of the Evidence—Possession*

■ Like Hernandez, Cardona claims that the evidence was insufficient to prove that he constructively possessed the cocaine. Cardona argues that he was only a passenger in the vehicle and there was no evidence that he lived at Montilla's apartment. Consequently, he argues there is no evidence that he had dominion and control over the cocaine.

It is true that mere presence in a jointly occupied residence or vehicle is insufficient to prove constructive possession. *See, e.g., United States v. Behanna,* 814 F.2d 1318, 1320 (9th Cir.1987); *United States v. Rodriguez,* 761 F.2d 1339, 1341 (9th Cir.1985); *Delgado v. United States,* 327 F.2d 641, 642 (9th Cir.1964); *see also Castillo,* 866 F.2d at 1086–88 (collecting cases).

A reasonable jury could infer that Cardona had dominion and control over the cocaine. First, Cardona was seen arriving with Cubero who carried the cocaine into the apartment. Second, he was seen later carrying $13,000 from the apartment to the car. Third, he was also present in the apartment when the cocaine was divided.

Concerted activity of this nature by the coconspirators creates an inference of constructive possession by each. *See Moreno,* 649 F.2d at 313. This cumulation of evidence also suggests that Cardona was an integral part of a "joint venture" that constructively possessed the cocaine. *See United States v. Morando–Alvarez,* 520 F.2d 882, 884 (9th Cir.1975). The final evidentiary weight to be put on the scale is Montilla's statement and the agent's understanding of it, that Cardona and Cubero owned the cocaine. *See United States v. Vaccaro,* 816 F.2d 443, 455 (9th Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 262, 98 L.Ed.2d 220 (1987); *United States v. Legendre,* 657 F.2d 238, 243 (8th Cir.), *cert. denied,* 454 U.S. 1037, 102 S.Ct. 580, 70 L.Ed.2d 483 (1981). The cumulative effect of this evidence is sufficient to support Cardona's conviction for possession with intent to distribute.

AFFIRMED.