956 F.2d 1168
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jose ALDACO-LOPEZ, Defendant-Appellant.
 No. 90-10648.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 16, 1992.
Decided March 3, 1992.
 
 Before GOODWIN, FLETCHER and BRUNETTI, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 OVERVIEW
 
 2
 Jose Aldaco-Lopez was convicted, following a jury trial, of conspiracy to bring in, transport, and harbor illegal aliens in violation of title 18 U.S.C. § 371. He was sentenced to a prison term of six months, followed by a three-year term of supervised release. On appeal, the Appellant argues that certain documentary evidence was admitted at trial although not properly authenticated and that the government failed to provide sufficient evidence linking him to the conspiracy. We disagree and affirm.
 
 FACTS AND PROCEEDINGS BELOW
 
 3
 The Appellant, Jose Aldaco-Lopez, was charged in a one count indictment, along with five others, with conspiracy to introduce, transport, and harbor illegal aliens, in violation of 18 U.S.C. § 371. The indictment specifically charged that the Appellant engaged in the overt acts of paying a government informant for the informant's services in transporting two illegal aliens into the United States and receiving sums of money during six different occasions through various Western Union offices in furtherance of the conspiracy.
 
 
 4
 At trial, the government presented the custodian of records for Western Union who identified two exhibits as records of Western Union. The exhibits contained Western Union money transfer receipts made out to the Appellant and photocopies of the Appellant's driver's license. The district court earlier had admitted a certified copy from the Department of Motor Vehicles of the Appellant's driver's license. Over the Appellant's objection for lack of foundation, the district court admitted the documents as business records under Federal Rule of Evidence 803(6).
 
 
 5
 On appeal, the Appellant argues that the government failed to authenticate the Western Union documents by laying the proper foundation as required by Federal Rules of Evidence 901(a) and 803(6) because it did not sufficiently identify who actually presented his driver's license to the Western Union clerk. The Appellant also contends that the government did not provide sufficient evidence linking him to the conspiracy.
 
 ANALYSIS
 
 6
 I. Foundation of the Western Union Documents.
 
 
 7
 A district court's decision regarding the admission of evidence is reviewed for abuse of discretion. United States v. Blackwood, 878 F.2d 1200, 1202 (9th Cir.1989) (sufficiency of authentication); United States v. Sanchez-Lopez, 879 F.2d 541, 553 (9th Cir.1989) (admission of evidence, generally).
 
 
 8
 Two rules of evidence are pertinent to this appeal. Federal Rule of Evidence 901(a) provides that the standard for admissibility is "satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." The government need only make a prima facie showing of authenticity "so that a reasonable juror could find in favor of authenticity or identification." Blackwood, 878 F.2d at 1202 (quoting United States v. Black, 767 F.2d 1334, 1342 (9th Cir.); cert. denied, 474 U.S. 1022 (1985) (quoting 5 J. Weinstein & M. Merger, Weinstein's Evidence, p 901(a) at 901-16 to -17 (1983)). Once the government meets this burden, the probative force of the evidence is an issue for the jury. Id. Federal Rule of Evidence 803(6) permits the admission of a business record as evidence of the truth of the matters asserted if it was made at or about the time of the event by a person with knowledge and was made and kept in the course of a regularly conducted business activity.
 
 
 9
 The Appellant does not dispute that the documents admitted at trial were Western Union documents bearing the Appellant's name and driver's license imprint. The Appellant instead takes issue with the fact that the government provided no witnesses showing that he entered the Western Union offices and picked up the money transfers. He points out that the Western Union custodian of records testified that she had no direct knowledge of who actually had received the money transfers and that it was possible someone other than the Appellant could have obtained the money if he matched the description on the license.
 
 
 10
 Contrary to the Appellant's assertion, however, the fact that the government did not produce such a witness is not dispositive on the issue of authentication under Rule 901(a) nor does it disqualify an otherwise sufficient business record under Rule 803(6). Circumstantial evidence is sufficient to link a defendant with documents purported to have been made or signed by him under both Rule 901(a), see, e.g., Blackwood, 878 F.2d at 1202 (testimony regarding IRS practises sufficient to show authenticity of tax records), Black, 767 F.2d at 1342 (fact that disputed evidence was found in Appellant's home is sufficient), and under Rule 803(6). United States v. Smith, 609 F.2d 1294, 1301 (9th Cir.1979) (eye witness testimony and corroboration of names and address signed by defendant sufficient).
 
 
 11
 We find that the government presented sufficient circumstantial evidence to meet its burden of showing a connection between the Appellant and the documents. As detailed above, the Western Union custodian of records testified that certain verification procedures are followed and identification required before the clerk is permitted to effectuate the money transfer. She also testified that the identification data on the exhibits matched that of the admitted photocopy of the Appellant's license. The government alleged six Western Union money transactions; the district court could have found that a clerk or clerks under orders to identify customers before transferring money would not have erred so many times in identification. Further, as described more fully below, the government presented testimony linking the Western Union money transfers to the conspiracy and the Appellant himself to a payment in furtherance of the conspiracy around the dates for which the government provided Western Union documents.[1]
 
 
 12
 The Appellant also argues that the documents, even if properly authenticated business records, improperly were introduced for the purpose of proving his identification. He is mistaken. Once the business records were properly admitted under Rule 803(6), they could be used to prove that someone presented the Appellant's driver's license and received the money. The jury could infer from this that the Appellant was the person that did so.
 
 
 13
 Finally, the Appellant argues that the prejudicial effect of the Western Union documents substantially outweighed their probative effect, in violation of Federal Rule of Evidence 403. He contends that the use of the evidence to show that he was receiving thousands of dollars from an unexplained source, coupled with his tactical decision not to testify, improperly misled the jury. We disagree. The documents were highly probative of his link to the conspiracy. We find that the documents did not "arouse the jury's feelings for one side without regard to the probative value of the evidence," United States v. Bowen, 857 F.2d 1337, 1341 (9th Cir.1988), and the district court did not abuse its discretion in admitting the documents under Federal Rule of Evidence 403.
 
 
 14
 II. Sufficiency of the Evidence.
 
 
 15
 In analyzing the sufficiency of the evidence linking the Appellant to the conspiracy, we must view the evidence in the light most favorable to the government and ask whether any rational trier of fact could have found the Appellant guilty beyond a reasonable doubt. United States v. Dorotich, 900 F.2d 192 (9th Cir.1990); United States v. Hernandez, 876 F.2d 774, 775 (9th Cir.), cert. denied, 493 U.S. 863 (1989); United States v. Mundi, 892 F.2d 817 (9th Cir.1989), cert. denied, 111 S.Ct. 1072 (1991).
 
 
 16
 It is well established that if the government proves the existence of a conspiracy, the defendant need only have a slight connection to it. Hernandez, 876 F.2d at 779; United States v. Penagos, 823 F.2d 346, 348 (9th Cir.1987); United States v. Taylor, 802 F.2d 1108, 1116 (9th Cir.1986), cert. denied, 479 U.S. 1094 (1987).
 
 
 17
 The government sufficiently established through testimony, and the defense counsel conceded in his opening and closing statements at trial and in his briefs on appeal, that Manuel and Ester Aldaco, the Appellant's brother and sister-in-law, were part of a conspiracy to bring in, transport, and harbor illegal aliens. In fact, four of the five defendants named in the indictment pled guilty to the charge of conspiracy and the fifth has not been apprehended.
 
 
 18
 The government likewise sufficiently established Appellant's link to the conspiracy. Two government informants, Josephina Salcido and Francisco Bustamante, testified that they made approximately twenty trips for Manuel and Ester Aldaco in which they picked up illegal aliens at the Mexican-American border.[2] They testified that on one trip they transported a woman and child to Manuel and Ester's home where they met the Appellant. For this service, they testified, the Appellant paid three hundred and fifty dollars either directly to Salcido or to Bustamante, who then handed the money over to Salcido.[3]
 
 
 19
 Both government informants further testified that Manuel told Salcido to contact the Appellant if she had illegal aliens and he was not available. He gave her the Appellant's telephone number. The informants testified that Appellant was present during this conversation. Salcido also spoke with Ester who told her that Manuel had "very good help with his brother Jose" in transporting illegal aliens. Ester later showed the two government informants the way to the Appellant's home.[4]
 
 
 20
 The government also presented evidence linking the Western Union transfers to the conspiracy. Manuel and Ester Aldaco told Salcido that they received money through Western Union transfers from the illegal aliens' families. Salcido testified that she sometimes had to wait at the Aldaco home one or two hours for Ester or Manuel to get the money from a Western Union office to pay her. Salcido testified that she received money for her services on various dates starting in January of 1989 and ending in June of 1989. These dates roughly correspond to the dates the Appellant allegedly picked up money transfers from the Western Union offices. Although the sums allegedly picked up by the Appellant exceed the sums paid to Salcido, the district court determined that the difference could be attributed to the conspirator's profit margin.
 
 
 21
 Viewing the evidence in the light most favorable to the government, we find that a rational jury could conclude, beyond a reasonable doubt, that Jose Aldaco-Lopez had a connection with the conspiracy.
 
 
 22
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Circuit Rule 36-3
 
 
 [1]
 Despite Appellant's assertion, United States v. Lieberman, 637 F.2d 95 (2d Cir.1980), is not to the contrary. In that case, the second circuit disallowed the introduction of a hotel registry under the business records exception to the hearsay rule because the customer, not the hotel clerk, wrote down the customer's name. Id. at 100. The clerk made no effort to check identification; nor was it customary hotel practice to do so. Id. at 101. Nor does United States v. Ordonez, 737 F.2d 793, 805 (9th Cir.1984), support the Appellant. In that case the government did not provide a custodian of the records, nor did it introduce evidence regarding how the records were made or maintained. Id. at 805
 
 
 [2]
 Salcido testified that she kept track of dates, people transported, and money paid to her. Although it is true, as Appellant points out, that Salcido admitted at trial that none of her notes refer to the Appellant, her notes did not reference to any of the conspirators
 
 
 [3]
 Although the informants' testimony as to whether the Appellant gave the money directly or indirectly to Salcido is somewhat vague, possibly because of the use of language translators at trial, their testimony is clear that the Appellant paid them for their service
 
 
 [4]
 It is unclear from the record whether the government informants ever delivered illegal aliens to the Appellant's home. Salcido testified that during the course of her relationship with the conspirators, Manuel and Ester moved into a new home and the Appellant and his family moved in with them. The delivery continued while the Appellant lived in this new home. Francisco, however, implied at trial that the new home was actually the Appellant's home. We do not find this discrepancy crucial, however, since we find that enough evidence exists to link the Appellant with the conspiracy without this evidence