974 F.2d 1344
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Enrique LOPEZ-TAPIA, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Manuel RIVERO-ORTIZ, Defendant-Appellant.
 Nos. 91-10434, 91-10435.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 13, 1992.
Decided Sept. 8, 1992.
 
 Before FLETCHER, GOODWIN and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Enrique Lopez-Tapia and Hector Manuel Rivero-Ortiz appeal their convictions, following a jury trial, for conspiracy to possess with intent to distribute marijuana and possession with intent to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(vii) and 846. They argue that the district court erred in denying their Motions for Acquittal pursuant to FED.R.CRIM.P. 29(a) because there was insufficient evidence to establish that they knowingly intentionally conspired with others and possessed marijuana.
 
 STANDARD OF REVIEW
 
 3
 "In reviewing the sufficiency of the evidence, this court must determine whether a reasonable jury, after viewing the evidence in the light most favorable to the government, could have found the defendants guilty beyond a reasonable doubt of each essential element of the crime charged." United States v. Hernandez, 876 F.2d 774, 777 (9th Cir.) (internal quotations omitted), cert. denied, 493 U.S. 863 (1989).
 
 STATEMENT OF FACTS
 
 4
 Viewed in the light most favorable to the government, evidence at trial showed the following:
 
 
 5
 On the evening of January 13, 1991, at about 6:00 p.m., Border Patrol Agent Enrique Yerena and his partner went to the west side of Ephraim Canyon near Nogales, Arizona, in response to sensor activity in the area. When another sensor activated on the east side of Ephraim Canyon, Agent Yerena moved 100 feet to the east, and his partner remained behind. Stationed at a wash 200 yards north of the international border and facing southward, Agent Yerena observed, through binoculars, several individuals walking on the top of a ridge which was located midway between the border and his location. The individuals were made visible by the light of a north-south highway which was located just east of the individuals.
 
 
 6
 Agent Yerena saw about 15 individuals move down the north side of the ridge towards him. Some were carrying bundles wrapped in packaging. He lost sight of the individuals when they entered a thicket of dense brush growth located just west of large, human-sized drainage tubes that ran under the highway. Responding to Agent Yerena's call for assistance, Border Patrol Agents Giaraputo and Gutierrez waited on the other side of the drainage tube east of the highway.
 
 
 7
 After about 20-30 minutes, four or five individuals emerged single file from the thicket, and entered the wash area at the west end of the drainage tubes. They walked back and forth, some remaining at the north side of the wash, some venturing nearer the drainage tubes looking back and forth up to the highway and to the north. Two of the individuals entered the tubes. Agent Yerena, who had a clear view of the tubes, never saw any other individuals in the area except those who came down the ridge in a group and who came out of the thicket. Agents Giaraputo and Gutierrez, warned by Agent Yerena that "they had traffic heading their way," arrested the two individuals who came through the tubes. These individuals were later identified as Appellants Lopez-Tapia and Rivero-Ortiz. Both were wearing long-sleeved black sweatshirts, green fatigue pants and sneakers.
 
 
 8
 The other individuals remained in the wash for two or three minutes, and then started south at a fast pace, retracing the same trail they had used earlier. Agent Yerena headed south after them, and discovered large bundles wrapped in cellophane which he believed to contain contraband. Rather than pursuing the individuals, he stayed with the contraband to secure it, hearing people running nearby.
 
 
 9
 Other agents were also unsuccessful in apprehending the individuals heading southbound. But the agents did discover a total of 19 bundles of cellophane-wrapped packages containing marijuana, weighing approximately 587 pounds and valued at approximately $469,000. In surveying the area, agents found only southbound tracks over northbound tracks. They later discovered footprints that matched the Appellants' sneakers in the sandy area of the wash and 20-25 feet along the trail which leads from the wash to the thicket.
 
 
 10
 Lopez-Tapia had testified that he and Rivero-Ortiz had entered the United States illegally at about 7:10 p.m. to meet two girls they had ridden around with in Mexico for three hours that day. They agreed to meet the girls at 8:00 p.m. at a laundromat in Nogales, Arizona, to continue riding around with them. Lopez-Tapia did not know the girls' last names or anything else about them and he did not know the make of car he rode around in that day.
 
 
 11
 Lopez-Tapia also testified he came over the ridge and walked down a steep embankment next to the highway. He said he walked onto the trail and did not have to jump over a fence. Agent Yerena later testified that anyone coming down the route Lopez-Tapia described would have had to crawl, not walk, down the embankment, and that it was practically impossible to get to the trail without going over a fence.
 
 
 12
 Lopez-Tapia testified that he never saw any other individuals on the ridge or in the area of the drainage tubes and did not see any bundles on the ground.
 
 SUFFICIENCY OF THE EVIDENCE
 A. Conspiracy Count
 
 13
 "To prove conspiracy, the government must show (1) an agreement (2) to engage in a criminal activity and (3) one or more overt acts in furtherance of the conspiracy." Hernandez, 876 F.2d at 777. "The existence of a conspiracy may be proved by circumstantial evidence that defendants acted together for a common illegal goal." United States v. Penagos, 823 F.2d 346, 348 (9th Cir.1987).
 
 
 14
 The following facts lead us to conclude a reasonable jury could have found beyond a reasonable doubt that Lopez-Tapia and Rivero-Ortiz acted with the other individuals in the common goal of possessing marijuana with the intent of distributing it. The group of individuals on the ridge were observed carrying bundles. They moved as a group into the thicket and remained there together until four or five emerged and walked single file into the wash where they behaved in a manner indicative of scouting. Two of the "scouts" disappeared into the drainage pipe. When they failed to return within three minutes, the individuals in the wash returned to the thicket and everyone fled south, leaving behind the packages of marijuana. The execution at night, close proximity of the individuals to each other, coordination and orchestration of events, and hurried retreat after Appellants failed to return indicates the individuals were intentionally together in a common plan to illegally transport the marijuana.
 
 B. Possession Count
 
 15
 To prove possession with intent to distribute, the government must show Appellants (1) knowingly (2) possessed the drug (3) with intent to distribute. United States v. Walitwarangkul, 808 F.2d 1352, 1353 (9th Cir.), cert. denied, 481 U.S. 1023 (1987). "Possession of a controlled substance under section 841(a)(1) 'may be constructive, as well as actual.' " United States v. Disla, 805 F.2d 1340, 1350 (9th Cir.1986) (quoting United States v. Grayson, 597 F.2d 1225, 1229 (9th Cir.), cert. denied, 444 U.S. 873 (1979)). Constructive possession "reflects the common sense notion that an individual may possess a controlled substance even though the substance is not on his person at the time of arrest." Id. Because marijuana was not found on the person of either Lopez-Tapia or Rivero-Ortiz at the time of arrest, we must consider whether they possessed it constructively.
 
 
 16
 Constructive possession is demonstrated by evidence of "a sufficient connection between the defendant and the contraband to support the inference that the defendant exercised a dominion and control over the substance." Id. (quotations omitted). Dominion and control can be demonstrated in two ways: (1) evidence of "defendant's participation in a 'joint venture' to possess a controlled substance," or (2) "direct or circumstantial evidence that the defendant had the power to dispose of the drug." Id.
 
 
 17
 a. Joint Venture
 
 
 18
 The Government argues that evidence of Appellants' participation in the conspiracy proves their participation in a "joint venture" to possess. We disagree. Evidence of conspiracy does not necessarily support a conviction for possession. See, e.g., id. at 1352 (phone calls which provided circumstantial evidence of defendant's connection to ongoing conspiracy were insufficient to show possession).
 
 
 19
 "[M]ere proximity to the drug, mere presence on the property where it is located, or mere association, without more, with the person who does control the drug ... is insufficient to support a finding of possession." Id. at 1351. In the present case, there is no evidence that Appellants had any function or association with the coconspirators beyond their scouting responsibilities. Although such evidence was sufficient to link them in a conspiracy, it is insufficient, in and of itself, to prove there was a joint venture to possess. See United States v. Penagos, 823 F.2d 346, 351 (9th Cir.1987) (court held, in dicta, that evidence of defendant acting as lookout does not indicate dominion and control over contraband).
 
 
 20
 b. Power to Dispose
 
 
 21
 The Government argues that Appellants' power to dispose of the marijuana is demonstrated by the following chain of events: Appellants failure to return from the drain pipe acted as a warning to their coconspirators which directly led the coconspirators to dispose of the marijuana and flee.
 
 
 22
 This argument supports the conspiracy conviction but does little to show constructive possession. Appellants' power to alert the others by failing to return falls short of also having a power to dispose of the drugs. A guide and lookout, acting as such in the course of a conspiracy, need not also be empowered by the division of labor within the conspiracy to dispose of the drugs. To this extent, the "power to dispose" analysis is similar to the "joint venture" analysis. Even viewed in the light most favorable to the Government, the evidence does not show that Appellants' involvement in the conspiracy was such that they had power to dispose of the drugs.
 
 
 23
 We AFFIRM the convictions as to count one (conspiracy to possess with intent to distribute), and REVERSE and REMAND with instructions to enter judgments of acquittal as to count two (possession with intent to distribute), and to enter amended judgments accordingly.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3