985 F.2d 575
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Arturo HERRERA-MERAS, Defendant-Appellant.
 No. 91-30300.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 3, 1992.*
Decided Jan. 21, 1993.
 
 Appeal from the United States District Court for the Western District of Washington, No. CR 90-297-JET; Jack E. Tanner, District Judge, Presiding.
 W.D.Wash.
 AFFIRMED.
 Before EUGENE A. WRIGHT, HUG and POOLE, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Appellant Arturo Herrera-Meras appeals his conviction following a jury trial based on (1) the district court's admission of evidence relating to the alleged weight of cocaine, (2) the district court's admission of compelled testimony, (3) the district court's rulings regarding the defense's version of a transcript of recorded conversations and (4) his federal prosecution after refusing to plead to charges in state court. We affirm.
 
 
 3
 * After a jury trial in the United States District Court for the Western District of Washington, Herrera-Meras was convicted on the following drug charges: one count of conspiracy to distribute five kilograms or more of cocaine in violation of 21 U.S.C. § 846 and one count of possession with intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. § 841(a)(1). Herera-Meras was subsequently sentenced to 121 months imprisonment.
 
 
 4
 Herrera-Meras was arrested based on information the Mount Vernon, Washington Police obtained from an informant. The informant arranged a drug sale with Francisco Meras to occur on August 5, 1990 at a house located in Mount Vernon. The police recorded eleven conversations between Meras and the informant.
 
 
 5
 The Mount Vernon police observed the August 5 sale and also recorded the conversation that took place between the informant, Meras and Herrera-Meras. The conversations, which were in Spanish, were contemporaneously interpreted and transcribed by a customs agent.
 
 
 6
 The sale took place as follows: After a brief discussion, the three men entered the garage adjacent to the house and closed the garage door. The three then discussed the quantity of the cocaine, and Meras stated that five and one-half kilograms were present.
 
 
 7
 After the informant left the garage and went into the house, the police went to the garage and announced themselves. They immediately forced the door open when they heard the sound of breaking glass. They arrested Meras and Herrera-Meras inside the garage and seized five and one-half kilogram-sized packages of cocaine. The seized packages were subsequently tested and weighed by Michael Hoover of the Washington State Patrol Crime Laboratory. The tests revealed that the packages contained cocaine with a combined weight of 5365.8 grams.
 
 
 8
 Following his arrest, Herrera-Meras was held in the Skagit County jail. On August 24, 1990, the Skagit County prosecutor charged Herrera-Meras with the crime of delivery of cocaine and conspiracy to deliver cocaine, in violation of RCW 69.50.401(a) and 69.50.401(a)(1)(i), respectively. Herrera-Meras was arraigned on these charges in Skagit County Superior Court on September 6, 1990.
 
 
 9
 On October 4, 1990, the Skagit County prosecutor charged Herrera-Meras by amended information with the crimes of possession of cocaine with the intent to deliver and conspiracy to deliver cocaine, in violation of RCW 69.50.401(a) and 69.50.407, respectively. Herrera-Meras was offered the opportunity to plead guilty to the charge of possession of cocaine with the intent to deliver, whereupon the prosecutor would dismiss the conspiracy charge. Herrera-Meras was informed that the state prosecutor would request an exceptional sentence above the guideline range but that he would not be prosecuted federally if he pleaded guilty. He was also told that if he did not accept the plea offer that his case would be referred to the United States Attorney's Office for possible federal prosecution.[1] Herrera-Meras refused the offer, and his case was referred to the United States Attorney's Office, which accepted the case for prosecution. On October 17, 1990, Herrera-Meras was charged by information on federal drug charges. On October 23, 1990, approximately one week before Herrera-Meras' state case was to go to trial, the charges were dismissed without prejudice on the prosecutor's motion. Herrera-Meras was indicted on the above-named federal drug charges on November 15, 1990.[2]
 
 
 10
 During Herrera-Meras' trial, Michael Hoover testified regarding the packages seized by the Mount Vernon police. During cross-examination, Hoover acknowledged that the scale used to weigh the packages was purchased before he became employed at the lab, was of unknown age and had not been certified prior to weighing the packages.[3]
 
 
 11
 Meras also testified for the government. During his direct examination, the court excused the jury to inquire whether Meras was invoking the privilege against self-incrimination. After determining that Meras had already pleaded guilty to his state court charges, the court concluded that the privilege was inapplicable and ordered Meras to answer questions concerning how the packages had been supplied or face incarceration for contempt of court. Subsequently, in the presence of the jury, Meras testified that Herrera-Meras had supplied him with the packages.
 
 
 12
 The district court allowed the prosecution to read a transcript of the conversation taped by the Mount Vernon police that was prepared by a certified court reporter and permitted it to distribute copies of the transcript to the jury. The district court denied Herrera-Meras' request to read and distribute the custom agent's version of the transcript and instead only allowed him to submit one copy to the jury.
 
 
 13
 I. The Admission of the Alleged Weight of the Cocaine
 
 
 14
 Herrera-Meras did not object to the sufficiency of the evidence supporting the alleged weight of the cocaine at trial. Therefore, the court will only review this claim for plain error. U.S. v. Hernandez, 876 F.2d 774, 777 (9th Cir.), cert. denied, 493 U.S. 863 (1989). A plain error is a highly prejudicial error affecting substantial rights. Id. (citations omitted).
 
 
 15
 Herrera-Meras argues that the district court should have excluded the government's expert's testimony regarding the weight of the packages because the scale used to weigh the packages had not been certified before the packages were weighed. The district court has wide discretion in determining whether scientific tests are sufficiently reliable to permit expert testimony based thereon, and its decision to admit or exclude such testimony will not be disturbed unless shown to be manifestly erroneous. United States v. Gwaltney, 790 F.2d 1378, 1381-82 (9th Cir.1986), cert. denied, 479 U.S. 1104 (1987) (citations omitted). In this case, there is evidence of the reliability of the scale. Although he admitted that the scale had not been certified prior to weighing the packages, Hoover testified that he had previously observed routine visits by manufacturer's representatives for the purpose of ensuring that the balance of the scale was accurate. Thus, the district court did not err in finding that the scale was sufficiently reliable. The district court also properly determined that the criticism by Herrera-Meras of the weighing of the packages went to the weight of the expert's testimony rather than its admissibility. Gwaltney, 790 F.2d at 1382.
 
 
 16
 Furthermore, even excluding Hoover's testimony, the evidence at trial was sufficient to establish the weight of the packages.[4] The transcript of Meras' statement that there were "five and a half" kilograms, the investigator's testimony that he recovered five kilogram-sized packages and Meras' trial testimony that he brought five and one-half kilograms to the house were sufficient proof of the weight of the packages.[5] Therefore, the district court did not commit plain error.
 
 II. Meras' Compelled Testimony
 
 17
 Herrera-Meras contends that Meras' testimony was compelled in violation of the Fifth Amendment and that as a result he was improperly convicted of the conspiracy charge against him. However, because Herrera-Meras cannot vicariously assert Meras' Fifth Amendment rights, he has no standing to raise this issue on appeal. United States v. Ward, 973 F.2d 730, 734 (9th Cir.1992); United States v. Valdovinos-Valdovinos, 743 F.2d 1436, 1437-38 (9th Cir.1984), cert. denied, 469 U.S. 1114 (1985).
 
 III. The Exclusion of the Transcript
 
 18
 Herrera-Meras argues that the district court committed plain error in allowing the government to read and circulate its version of the transcript of the taped conversations to the jury and in not allowing him to read and distribute his version of the transcript to the jury in the same manner. These evidentiary rulings are reviewed for an abuse of discretion. United States v. Taghipour, 964 F.2d 908, 910 (9th Cir.), cert. denied, 113 S.Ct. 283 (1992); United States v. Emmert, 829 F.2d 805, 808 (9th Cir.1987). Because Meras did not object to these rulings, they are reviewed for plain error. Hernandez, 876 F.2d at 777.
 
 
 19
 This court has held that government-prepared transcripts may be used by the jury so long as the district court takes steps to ensure the accuracy of the transcripts. United States v. Hsieh Hui Mei Chen, 754 F.2d 817, 824 (9th Cir.), cert. denied, 471 U.S. 1139 (1985). In this case, the district court required the government to certify its version of the transcript and allowed the defense counsel to introduce an alternate transcript to the jury. The district court did not abuse its discretion in this regard.
 
 
 20
 There is also no showing that the district court allowed the "needless presentation of cumulative evidence" in violation of Federal Rule of Evidence 403. Although the government's transcript was admitted in evidence in addition to being read and circulated to the jury, Herrera-Meras has not shown that the jurors gave it duplicative or undue consideration. "Absent anything more specific than a presumption that the transcripts were used by the jury and a generalized claim that the jury must have been prejudiced, we find no error in the transcripts being in the jury room." United States v. Costa, 691 F.2d 1358, 1363 (11th Cir.1982), cited in Taghipour, 964 F.2d at 910.
 
 
 21
 The district court did not commit plain error in not allowing Herrera-Meras to distribute copies of a second version of the transcript to the jury.[6] The jury was allowed to consider the alternative transcript; a single copy of the transcript was admitted in evidence. Contrary to Herrera-Meras' argument, there is no basis for finding that the jury would have given the alternative transcript different weight or come to a different verdict if this transcript had been presented to them differently. Although the two transcripts are very different, neither is exculpatory.
 
 
 22
 IV. The Subsequent Prosecution in Federal Court
 
 
 23
 Herrera-Meras argues that the institution of a federal prosecution subsequent to his refusal to plead to state court criminal charges was unconstitutional. Herrera-Meras properly raised this issue in the district court. We review de novo the district court's denial of his motion for dismissal. U.S. v. Cook, 859 F.2d 777, 778 (9th Cir.1988).
 
 
 24
 Using the possibility of more severe federal charges as a bargaining tool in plea negotiations is not unconstitutional. In Bordenkircher v. Hayes, 434 U.S. 357, 365 (1978), the Supreme Court held that presenting a defendant with the unpleasant alternatives of foregoing trial or facing charges on which he is plainly subject to prosecution was not unconstitutional. While noting that "[t]o punish a person because he has done what the law plainly entitles him to do is a due process violation...." The Court stated that "in the 'give and take' of plea bargaining, there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer." Id. at 363-64. Furthermore, "by tolerating and encouraging the negotiation of pleas, this Court has necessarily accepted as constitutionally legitimate the simple reality that the prosecutor's interest at the bargaining table is to persuade the defendant to forego his right to plead not guilty." Id. at 364.
 
 
 25
 The fact that the state prosecutor referred Herrera-Meras' case to the federal government after the plea negotiations failed and subsequently dismissed the state charges against him also is not unconstitutional. Because Herrera-Meras's conduct violated both the laws of the State of Washington and the United States, either or both could have prosecuted him. See United States v. Figueroa-Soto, 938 F.2d 1015, 1020 (9th Cir.1991), cert. denied, 112 S.Ct. 1181 (1992). Moreover, in U.S. v. Ballester, 763 F.2d 368 (9th Cir.), cert. denied, 474 U.S. 842 (1985), this court held that a state prosecutor's statement to a defendant that he would refer the case to federal authorities if the defendant caused his state charges to be dismissed was not improper. Id. at 369-370. This court also stated that "[t]he role of a separate sovereign in bringing the increased charges minimizes the likelihood of prosecutorial abuse." Id.
 
 
 26
 These holdings dictate that the state prosecutor's use of the potential of a federal prosecution as a bargaining tool during plea negotiations, thereby leaving Herrera-Meras with the choice of foregoing his right to trial or possibly facing more severe federal charges was not unconstitutional.[7] Herrera-Meras' subsequent prosecution in federal and not state court is also not unconstitutional.
 
 
 27
 The district court's judgment is AFFIRMED.
 
 
 
 *
 Pursuant to Federal Rule of Appellate Procedure 34(e), the court heard argument on behalf of the appellee
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The prosecutor made a similar plea offer to Meras, who accepted it and was allowed to plead guilty to one charge of delivery of cocaine in Skagit County Superior Court. Meras has not been federally prosecuted
 
 
 [2]
 Prior to trial, Herrera-Meras moved to dismiss the charges against him, asserting the transfer of his case to federal court was in retaliation for exercising his constitutional right to trial and violated due process and equal protection. This motion was denied
 
 
 [3]
 Hoover also testified that he believed the scale had been certified in the previous year
 
 
 [4]
 The government is required to prove the weight of the packages by a preponderance of the evidence. United States v. Soleto-Rivera, 931 F.2d 1317, 1319 (9th Cir.1991)
 
 
 [5]
 Furthermore, the defense introduced no contradictory evidence on this issue
 
 
 [6]
 The customs agent who made the transcript proffered by the defense admitted that it was a rough draft and not of professional quality. The agent also suggested that the government obtain a transcript of the tape from a federally certified court reporter
 
 
 [7]
 To the extent that Herrera-Meras challenges the United States' indictment of him as vindictive or selective, his claim has no merit. There are no facts showing that the United States acted in retaliation in bringing charges against Herrera-Meras. Absent an allegation of vindictive or selective prosecution, a prosecutor's decision to pursue federal instead of state charges is not unconstitutional. U.S. v. Reyes, 966 F.2d 508, 509 (9th Cir.), cert. denied, 113 S.Ct. 355 (1992), citing U.S. v. Burt, 619 F.2d 831, 837-38 (9th Cir.1980). This circuit has recently held that a prosecutor's charging decision cannot be judicially reviewed absent a prima facie showing that it rested on an impermissible basis, such as gender, race or denial of a constitutional right. United States v. Redondo-Lemos, 955 F.2d 1296, 1300-01 (9th Cir.1992)