UNITED STATES of America,
Plaintiff–Appellee,

v.

Jose Luis BUENA–LOPEZ, aka Jose Luis Buelna–Lopez, Defendant–Appellant.

No. 92–10326.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 3, 1993.

Decided March 9, 1993.

Morton Rivkind, Phoenix, AZ, for defendant-appellant.

Vincent Q. Kirby, Asst. U.S. Atty., Phoenix, AZ, for plaintiff-appellee.

Before: ALARCON, RYMER and T.G. NELSON, Circuit Judges.

ALARCON, Circuit Judge:

Jose Luis Buelna–Lopez appeals from the judgment entered following his conviction for conspiracy to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(ii) and 846, and possession with intent to distribute cocaine, and aiding and abetting the possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(ii) and 18 U.S.C. § 2. Buelna–Lopez contends the evidence presented at trial was insufficient to establish his knowledge of the conspiracy. He further argues that the district court erred in denying his motion for a severance. We affirm.

## I. FACTUAL BACKGROUND

This case arises out of a drug transaction that took place on August 22, 1991. The four people present at that transaction were Jose Luis Buelna–Lopez, Jesus Ozuna Rodarte, undercover Drug Enforcement Agent James Brown, and Francisco Romaro, a confidential informant for the Drug Enforcement Administration.

The Government's evidence showed that Rodarte approached Romaro about selling narcotics to him. Romaro told him that he had a friend who would be interested in purchasing cocaine, and subsequently introduced Agent Brown to Rodarte. Rodarte sold Agent Brown one ounce of cocaine on August 9, 1991, and another ounce on August 19, 1991. At a meeting at Rodarte's residence on August 21, 1991, Rodarte agreed to sell Agent Brown one kilogram of cocaine on August 22, 1991.

On August 22, Rodarte drove with Romaro to an apartment complex to pick up the drugs. When they arrived at the apartment complex, Romaro saw Buelna–Lopez looking out the window. Upon seeing Romaro and Rodarte, Buelna–Lopez exited the apartment carrying a blue bag and entered Romaro's vehicle without a contemporaneous invitation. Once Buelna–Lopez had entered the vehicle, Rodarte told him, "[T]here's no problem—we're going after the money." Buelna–Lopez did not respond. Rodarte, Romaro, and Buelna–Lopez then drove to a K-mart parking lot to meet Agent Brown.

When they met Agent Brown at the parking lot, he stated "[L]et's see what it looks like." Buelna–Lopez responded by pointing to the blue bag. Agent Brown opened the blue bag and found approximately one kilogram of cocaine. Rodarte and Buelna–Lopez were arrested.

Rodarte testified that he was induced to sell cocaine to Agent Brown by Romaro. Buelna–Lopez's theory of defense was that he had no knowledge of the drug transaction and was merely present when the cocaine was delivered to Agent Brown. On the first day of trial, Buelna–Lopez moved for severance on the ground that the defenses of mere presence and entrapment are mutually antagonistic. The district court denied the motion. Buelna–Lopez unsuccessfully renewed his motion for severance several times during the trial. The jury found Buelna–Lopez and Rodarte guilty of the charged offenses.

## II. SUFFICIENCY OF EVIDENCE

Buelna–Lopez contends that the evidence was insufficient to sustain his conviction

for conspiracy to distribute cocaine. In determining whether evidence produced at trial is sufficient to support a conviction, we must decide "whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Skillman,* 922 F.2d 1370, 1372 (9th Cir.1990) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in the original)), *cert. dismissed,* —— U.S. ——, 112 S.Ct. 353, 116 L.Ed.2d 275 (1991). The government is entitled to all reasonable inferences that might be drawn from the evidence. *United States v. Johnson,* 804 F.2d 1078, 1083 (9th Cir.1986).

Buelna–Lopez does not dispute the existence of a conspiracy to distribute cocaine. Rather, he maintains that the evidence presented at trial was insufficient to demonstrate his knowledge of the conspiracy.

■ A conspiracy consists of an agreement to engage in criminal activity coupled with one or more overt acts in furtherance of the conspiracy. *United States v. Hernandez,* 876 F.2d 774, 777 (9th Cir.), *cert. denied,* 493 U.S. 863, 110 S.Ct. 179, 107 L.Ed.2d 135 (1989). An agreement may be inferred from the defendant's acts or other circumstantial evidence. *Id.* Once the existence of the conspiracy is demonstrated, evidence of even a slight connection with the conspiracy is sufficient to establish a defendant's knowing participation in a conspiracy. *United States v. Mares,* 940 F.2d 455, 458 (9th Cir.1991). Although a defendant's mere proximity to the scene of a crime is insufficient to establish his knowing participation in a conspiracy, seemingly innocent acts, when viewed in their proper context, may support an inference of guilt. *Id.*

■ The evidence presented at trial was sufficient to demonstrate Buelna–Lopez's knowing participation in the conspiracy. Romaro testified that he thought he observed someone resembling Buelna–Lopez at Rodarte's apartment on the morning of August 22, 1991. Agent Brown testified that Buelna–Lopez fit the description Romaro gave to him earlier that morning of a man whom Romaro saw at Rodarte's residence and believed to be the source of the cocaine. Agent Brown also testified that Rodarte told him that because he and his source had become frightened after observing some suspicious vehicles near Rodarte's residence, they moved the cocaine from Rodarte's residence to its original storage place. Rodarte told Agent Brown that a dealer named "Juan" agreed to supply him with a kilogram of cocaine. Rodarte reported that he was instructed by Juan to pick up the narcotics at an apartment complex. Romaro testified that when he and Rodarte arrived at the designated apartment complex, they observed Buelna–Lopez looking out the window. As described above, when Buelna–Lopez saw Romaro and Rodarte, he immediately left the apartment and entered Romaro's van while Romaro and Rodarte remained in the vehicle. Romaro further testified that when Buelna–Lopez entered the van with the blue bag, Rodarte told Buelna–Lopez that everything was fine and that they were "going after the money." A rational jury could have inferred from the fact that Buelna–Lopez entered the vehicle without invitation that he had been previously instructed by someone to keep the cocaine in his presence until he received full payment.

Agent Brown testified that in response to his request to "see what it looks like," Buelna–Lopez pointed to the bag which was concealed between the wall of the van and the rear passenger seat. The bag contained a kilogram of cocaine. The jury could have reasonably inferred that Buelna–Lopez concealed the bag from plain view because he did not want to lose control of it without first obtaining the money. This evidence would support a finding that Buelna–Lopez was either the supplier of the cocaine, or a courier whose mission was to ensure that the drugs were not delivered to the purchaser until the money was received. Thus, when viewed as a whole and in the light most favorable to the prosecution, the evidence was sufficient for a rational trier of fact to find beyond a reasonable doubt that Buelna–Lopez knowingly participated in a conspiracy to distribute cocaine.

### III. DENIAL OF SEVERANCE

Buelna–Lopez contends that the district court's denial of his severance motion denied him due process. He offers three arguments in support of this contention. First, Buelna–Lopez argues that he was entitled to a severance because the defenses of entrapment and mere presence are mutually antagonistic. He also claims that he was deprived of a fair trial because Rodarte's counsel acted as a "second prosecutor" in eliciting testimony from a government witness that was manifestly prejudicial to Buelna–Lopez's defense. Third, he asserts that the district court's refusal to grant a severance compromised his trial right to remain silent.

■ We review the denial of a severance motion for an abuse of discretion. *United States v. Tootick*, 952 F.2d 1078, 1080 (9th Cir.1991). A denial of a motion for a severance is rarely disturbed on appeal. *United States v. Escalante*, 637 F.2d 1197, 1201 (9th Cir.), *cert. denied*, 449 U.S. 856, 101 S.Ct. 154, 66 L.Ed.2d 71 (1980). To establish abuse of discretion, the appellant must meet the very heavy burden of demonstrating that the joint trial "was so manifestly prejudicial as to require the trial judge to exercise his discretion in but one way, by ordering a separate trial." *United States v. Abushi*, 682 F.2d 1289, 1296 (9th Cir. 1982).

■ Rule 8(b) of the Federal Rules of Criminal Procedure provides that defendants may be charged in the same indictment "if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Fed. R.Crim.P. 8(b). Generally, defendants who are charged together should be jointly tried. *Tootick*, 952 F.2d at 1080. This is also the rule in conspiracy cases. *Escalante*, 637 F.2d at 1201. Joint trials promote efficiency and "serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." *Zafiro v. United States*, —— U.S. ——, ——, 113 S.Ct. 933, 937, 122 L.Ed.2d 317 (1993) (quoting *Richardson v. Marsh*, 481 U.S. 200, 209–210, 107 S.Ct. 1702, 1708, 95 L.Ed.2d 176 (1987)).

If, however, it "appears that a defendant or the government is prejudiced by a joinder," the court may grant a severance. Fed.R.Crim.P. 14.

Buelna–Lopez contends that we must reverse the district court's denial of his motion for a severance because the defenses of mere presence and entrapment are mutually antagonistic. In *Zafiro*, the Supreme Court expressly rejected the argument that severance is always required whenever defendants present mutually antagonistic defenses. *Zafiro*, —— U.S. at ——, 113 S.Ct. at 937–38. The Court explained that in determining whether a joint trial would cause sufficient prejudice to warrant a severance, the relevant inquiry is whether "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* at ——, 113 S.Ct. at 938. The Court recognized that the "risk of prejudice will vary with the facts in each case" and "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Id.*

Buelna–Lopez relies on *Tootick*, 952 F.2d at 1078, to support his contention that the defenses of mere presence and entrapment are mutually antagonistic and that joinder prejudiced his defense. In *Tootick*, we recognized the potential for prejudice that exists when defendants present mutually antagonistic defenses:

Defendants who accuse each other bring the effect of a second prosecutor into the case with respect to their codefendant. In order to zealously represent his client, each codefendant's counsel must do everything possible to convict the other defendant. The existence of this extra prosecutor is particularly troublesome because the defense counsel are not always held to the limitations and standards imposed on the government prosecutor.... Counsel can make and oppose motions that are favorable to their defendant, without objection by the government.

*Id.* at 1082.

*Tootick*, however, is factually distinguishable from the matter before this

court. In *Tootick*, each defendant claimed innocence and directly accused the other of committing the crime charged. *Id.* at 1081. We held that the defenses were mutually antagonistic, because "the acquittal of one [codefendant] necessitate[d] the conviction of the other." *Id.* We concluded that severance was required under the facts in that case, because the "jury could not have been able to assess the guilt or innocence of the defendants on an individual and independent basis." *Id.* at 1083.

■ Under the facts of this case, however, the jury could have assessed the guilt or innocence of the defendants on an individual and independent basis. The jury could have believed Rodarte's testimony that he was induced to sell cocaine, and still have found Buelna–Lopez not guilty of conspiracy if it concluded that he was merely present during that narcotics transaction and had no knowledge of the contents of the blue bag.

■ Buelna–Lopez further argues that the testimony elicited against Buelna–Lopez by Rodarte's counsel prejudiced his defense. Relying again on our decision in *Tootick*, Buelna–Lopez asserts that Rodarte's counsel acted as a "second prosecutor" in eliciting the following testimony from Agent Brown:

Mr. Alvarez (Rodarte's counsel): Agent Brown, talking about rip-offs, drug dealers are not inclined then to let their product go without making sure it's not going to disappear, be stolen?

Agent Brown: From whose standpoint?

Mr. Alvarez: From the dealer's standpoint.

Agent Brown: Usually no.

Mr. Alvarez: He wants to maintain control, make sure where it is, he's got his hands on it?

Agent Brown: Yes, *or with a representative of his organization whom he trusts.*

Mr. Alvarez: Okay. Let me make sure I got this right. *The person that got in the van with the blue bag with the cocaine was Mr. Lopez?*

Agent Brown: To my knowledge, yes. (emphasis added).

We disagree with Buelna–Lopez's contention that this testimony prejudiced his defense. As noted previously, the Government presented evidence in its case-in-chief against Buelna–Lopez from which a reasonable juror could have inferred that Buelna–Lopez was either the supplier of the cocaine, or the courier sent along to ensure that the drugs were not delivered until the money was paid. Because the evidence concerning Agent Brown's description of a courier's role in a drug transaction, and the repetition of his earlier testimony regarding Buelna–Lopez's exercise of dominion over the blue bag and its contents, had already been elicited in the Government's case-in-chief against Buelna–Lopez, Agent Brown's testimony was cumulative. This cumulative testimony was not unduly prejudicial to Buelna–Lopez's defense.

Contrary to Buelna–Lopez's contention, Rodarte's counsel did not act as a second prosecutor. Throughout most of the trial, Rodarte's counsel made no effort to implicate Buelna–Lopez in the conspiracy. Rodarte testified that Buelna–Lopez was not the source of the cocaine, and that he had not seen Buelna–Lopez ever view the contents of the blue bag. Rodarte's counsel did not suggest to the jury that it was necessary to find Buelna–Lopez guilty in order to acquit his client. Rather, he argued to the jury that they should find that his client was entrapped, without regard to whether the jury believed that Buelna–Lopez was guilty. During closing argument, Rodarte's counsel stated to the jury:

If you believe Mr. Lopez was the courier, the person who had custody of that cocaine, that he's the person that Juan sent to meet with the agents, that's fine. But as to Mr. Rodarte, the issue is did a government agent pressure him, convince him to become involved in a drug deal with the informant's partner when Mr. Rodarte did not want to do that but finally agreed to do it after the agent pushed and pushed and finally pushed Mr. Rodarte to the point where he agreed to do it.

The district court instructed the jury to consider the evidence against each defendant separately and that the verdict of one defendant should not control the verdict of the other. This admonition, read to the jury shortly after Agent Brown's rebuttal testimony, reduced the risk of any prejudice that may have flowed from Agent Brown's testimony. *See Zafiro*, —— U.S. at ——, 113 S.Ct. at 939 (instruction to jury to give separate consideration to each individual defendant and to the evidence against them was sufficient to cure any prejudice resulting from district court's denial of severance motion). Therefore, we hold that the testimony elicited by Rodarte's counsel against Buelna–Lopez was an "isolated attack[ ]" which did not create the compelling prejudice necessary to require a severance. *United States v. Sherlock*, 865 F.2d 1069, 1082 (9th Cir.1989).

Buelna–Lopez further asserts that the denial of his motion for a severance compromised his trial right to remain silent in violation of the rule announced in *Zafiro*. *See id.* —— U.S. at ——, 113 S.Ct. at 938 (severance only required where "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants"). He argues that because Rodarte's counsel cross-examined Agent Brown concerning the involvement of drug couriers in protecting a supplier's product, Buelna–Lopez was faced with the choice of taking the stand to exonerate himself, or exercising his right to remain silent and risking conviction. He asserts that he would not have been faced with this dilemma had the district court granted a severance, because had Buelna–Lopez been tried separately, Rodarte's counsel would not have been able to cross-examine Agent Brown in that proceeding. This contention is without merit. Buelna–Lopez chose not to take the stand notwithstanding Agent Brown's testimony. The jury was instructed that the defendant had the right to remain silent, and that it was not to draw any inferences from the fact that Buelna–Lopez did not testify. As a result, Buelna–Lopez cannot complain that his right to remain silent was compromised by the joint trial.

"[I]t is well settled that defendants are not entitled to severance merely because they have a better chance of acquittal in separate trials." *Id.* To demonstrate that the district court abused its discretion in denying a severance, an appellant must show "that the magnitude of the prejudice denied him a fair trial." *United States v. Ramirez*, 710 F.2d 535, 546 (9th Cir.1983). Because the evidence previously adduced by the prosecution in its case-in-chief against Buelna–Lopez was sufficient to support an inference that Buelna–Lopez acted as a courier for a cocaine dealer, Agent Brown's testimony in response to Rodarte's counsel's question was cumulative. Buelna–Lopez has failed to demonstrate that the introduction of this cumulative evidence against him by his co-defendant's attorney manifestly prejudiced his right to a fair trial. Therefore, we hold that the district court did not abuse its discretion in denying the motion for a severance.

AFFIRMED.