29 F.3d 637
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Frederick A. WINZER, Defendant-Appellant.
 No. 93-30205.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 3, 1994.
Decided July 12, 1994.
 
 Before: SCHROEDER, BOOCHEVER, and BRUNETTI, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Defendant Frederick Winzer ("Winzer") was indicted on eight counts: (1) distribution of cocaine base on or about October 23, 1992; (2) distribution of cocaine base on or about October 27, 1992; (3) distribution of cocaine base on or about October 29, 1992; (4) possession with intent to distribute approximately 200 grams of cocaine base on or about November 4, 1992; (5) possession of three unregistered firearms between October 1, 1992 and November 18, 1992; (6) using a firearm during and in relation to a drug trafficking crime between October 1, 1992 and November 18, 1992; (7) knowingly and intentionally employing two unnamed individuals alleged to be minors to distribute cocaine between October 1, 1992 and November 4, 1992; and (8) conspiring with YeVonne Winzer to distribute and possess with intent to distribute cocaine between October 1, 1992 and November 4, 1992. The district court granted in part Winzer's motion to dismiss under Federal Rule of Criminal Procedure 29, dismissing Count 7 and part of Count 5 by deleting two of the three firearms. A jury convicted Winzer on all remaining counts. The court sentenced him to thirty years imprisonment, composed of a 20-year mandatory minimum, which included a 10-year enhancement for a prior California state conviction, and another 10-year enhancement for his conviction for using a firearm during and in relation to a drug trafficking crime. Winzer appeals his conviction and sentence.
 
 
 3
 * Winzer contends that there is not sufficient evidence to support his conviction for conspiracy with YeVonne Winzer, his wife, to possess and distribute cocaine (Count 8). Sufficient evidence supports a defendant's conviction if " 'reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " United States v. Bishop, 959 F.2d 820, 829 (9th Cir.1992) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).
 
 
 4
 The jury may infer the existence of an agreement to establish a conspiracy from the defendant's acts or other circumstantial evidence. United States v. Buena-Lopez, 987 F.2d 657, 659 (9th Cir.1993). Knowing participation in the conspiracy only requires a slight connection with the conspiracy. Id. "Although [one's] mere proximity to the scene of a crime is insufficient to establish his [or her] knowing participation in a conspiracy, seemingly innocent acts, when viewed in their proper context, may support an inference of guilt." Id.
 
 
 5
 There is sufficient evidence in this case to support the jury's finding that Winzer conspired with YeVonne Winzer to possess and distribute cocaine. YeVonne Winzer testified that she bought two pagers, one for Winzer and one for Ronald Wilkins, aka Ron Ron. She stated that Ron Ron's purpose for getting the pager was for crack cocaine and said that Winzer used the pager "[f]or drugs." She also testified that on one occasion when she and Winzer were stopped by the police for a traffic violation, she concealed Winzer's pager, pipe, and "dope" in her pants.
 
 
 6
 In addition, YeVonne Winzer testified that she drove Winzer, who did not have a driver's license, to a video store on October 29, 1992, where they met Ron Ron, Rodney Matthews, and two federal agents. She went into the video store, while the agents and Winzer talked. One of the agents testified that they discussed exchanging guns for drugs. YeVonne testified that after the meeting she drove Winzer to Ron Ron's house. Then, she drove him back to the video store and met up with the agents to sell them a small amount of crack cocaine. One of the agents got in the back seat of the car, and at Winzer's direction, YeVonne handed the agent a cellophane bag of cocaine. She testified that she knew the bag contained "some kind of drugs" and responded "yes" to the question whether she had seen those kinds of cellophane bags before. She also stated that she knew that Winzer had "dope in the house."
 
 
 7
 The evidence of YeVonne Winzer's participation in and knowledge of these activities is sufficient evidence for any rational jury to conclude that a conspiracy existed between Winzer and his wife. See United States v. Hernandez, 876 F.2d 774, 779-80 (9th Cir.) (sufficient evidence supported conspiracy conviction when defendant was present when cocaine divided and at meetings of codefendants and participated in countersurveillance activities), cert. denied, 493 U.S. 863 (1989).
 
 II
 
 8
 Winzer argues that there is not sufficient evidence to support his conviction for possession with intent to distribute approximately 200 grams of cocaine (Count 4), because the government failed to show that he had dominion and control over the crack cocaine found in his refrigerator on November 4, 1992. Winzer asserts that the cocaine belonged to his cousins and that he was watching a video with his wife and children and did not know that his cousins had put fake soda and beer cans filled with cocaine in his refrigerator.
 
 
 9
 The evidence shows that Winzer had at least constructive possession of the cocaine seized from his refrigerator on November 4, 1992.
 
 
 10
 To prove constructive possession, the defendant must have sufficient dominion and control to give him the power of disposal.... Possession and knowledge can be established by circumstantial evidence.... Mere proximity to contraband, presence on property where it is found and association with a person or persons having control of it are all insufficient to establish constructive possession. Constructive possession can be proved by the defendant's participation in a joint venture to possess a controlled substance.
 
 
 11
 Hernandez, 876 F.2d at 778 (citations and quotations omitted) (defendant's admitted possessory interest in apartment where cocaine seized and coordinated activity among defendants sufficient to establish constructive possession).
 
 
 12
 In this case, the government found the cocaine in Winzer's refrigerator when he was home, and Bobby Jenner ("Jenner") testified that Winzer got crack cocaine for him out of fake beverage cans located in the refrigerator. In addition, the jury could have noted that the amount of cocaine seized from the cans in the refrigerator on November 4, 1992 was approximately the same amount that was to be exchanged at the drugs for guns transaction scheduled by the agents, Winzer, and several others on October 29, 1992. This evidence supports the jury's conclusion that Winzer knowingly possessed the cocaine seized from his refrigerator on November 4, 1992. See United States v. Martinez, 967 F.2d 1343, 1345-46 (9th Cir.1992) (sufficient evidence supported defendant's conviction for knowing possession when one kilogram of cocaine, cash, scale, smaller baggies of cocaine, and pager found in defendant's house, despite defendant's assertion that guest staying in bedroom where cocaine found); United States v. Mena, 925 F.2d 354, 356 (9th Cir.1991) (sufficient evidence supported defendant's conviction for knowing possession when cocaine found in defendant's van, an area over which he had control, even though stipulated facts didn't state that defendant ever touched the cocaine).
 
 III
 
 13
 Winzer contends there was insufficient evidence to support his conviction for use of a firearm during and in relation to a drug trafficking crime (Count 6).
 
 
 14
 Jenner, Winzer's brother-in-law, testified that in late September or early October Winzer engaged in target practice with a sawed-off shotgun at a ranch belonging to Jenner's mother (Winzer's mother-in-law). Jenner testified that he later helped Winzer tape up the butt of the weapon. Winzer denied owning or possessing the weapon and testified that Jenner had brought the weapon over to Winzer's garage, where it stayed in Jenner's car, and that Winzer had given some tape to Jenner to tape the handle.
 
 
 15
 Jenner's key testimony was that on October 23, 1992, he went to Winzer's house and entered the bedroom where Winzer was standing by the dresser while his wife, YeVonne Winzer, slept in the bed. Jenner asked to buy some crack cocaine and Winzer told him to leave and wait in the front room. Jenner claimed that while in the bedroom he saw the taped butt of the shotgun protruding from under a pile of clothes on the floor of the closet. Jenner testified that the actual drug transaction took place in the front room. The trial court expressed serious concern about Jenner's credibility, given Jenner's considerable bias against Winzer.
 
 
 16
 If this were all the evidence, while we might view with some skepticism Jenner's testimony about observing the contents of the closet, particularly his noting the taped butt protruding from a pile of clothes, we could not say that a rational juror could not find Winzer guilty beyond a reasonable doubt.
 
 
 17
 On November 4, 1992, however, government agents searched Winzer's house pursuant to a warrant. They found drugs and a large amount of cash consistent with drug transactions. Significantly, however, they did not find the taped shotgun or any other weapon.
 
 
 18
 After the search and Winzer's incarceration, Winzer's mother-in-law and other relatives removed the furniture from the apartment to a storage facility rented in another name. On tips from Jenner and Winzer's mother-in-law, the agents later searched that facility and found three shotguns, including the sawed-off shotgun with the taped handle. The taped shotgun was wrapped in a blanket in a dresser drawer. The trial court properly found there was insufficient evidence to tie Winzer to the two other guns, but left it to the jury to decide whether Winzer possessed the shotgun with the taped butt.
 
 
 19
 If Winzer kept a shotgun for use in relation to his drug dealings, it is almost inconceivable that at the time of the search, the drugs and money would be present, but no gun. If Winzer had sufficient notice of the search to dispose of the gun, he would also have removed the other incriminating evidence. Because it is so unlikely that the weapon would not have been in the house when it was searched if Winzer had it in the closet on the occasion of Jenner's visit, we conclude that no reasonable juror could find beyond a reasonable doubt that the gun was in Winzer's house at the time of the drug sale. Accordingly, we reverse Winzer's conviction for use of a weapon during and in relation to a drug trafficking crime.
 
 
 20
 Winzer also appeals his conviction for possession of the unregistered taped shotgun (Count 5). Because that conviction is based on Jenner's testimony concerning the circumstances involved at the time of the target shooting and the taping of the handle, testimony which was not inconsistent with the weapon's absence at the time of the November 4, 1992, search of Winzer's house, there was sufficient evidence to support the conviction on that count.
 
 
 21
 In United States v. Torres-Medina, 935 F.2d 1047 (9th Cir.1991), we upheld a conviction of a paraplegic for use of a firearm in relation to a drug trafficking offense when a search found the gun and cocaine in a crawl space under the house. We held that:
 
 
 22
 a firearm may be considered available for purposes of section 924(c)(1) if its physical proximity to the defendant at any time during the commission of the crime, or during arrest, supports the inference that it emboldened him to commit the underlying offense or to resist arrest. Whether such an inference is legitimately raised will depend on the circumstances of the individual case.
 
 
 23
 Id. at 1050.
 
 
 24
 Here the possession of the gun at the ranch was a distance from Winzer's home and at a time when there was no evidence of a drug offense. There was insufficient evidence for a reasonable juror to find beyond a reasonable doubt that there was a weapon "in physical proximity to the defendant at any time during the commission of the crime, or during [his] arrest [to] support the inference that it emboldened" Winzer to commit the drug offense or to resist arrest.
 
 IV
 
 25
 Winzer contends that his conviction on Count 1 should be reversed because there was a material and prejudicial variance between the indictment and the evidence at trial. " 'A variance between indictment and proof does not require reversal unless it affects the substantial rights of the parties.' " United States v. Von Stoll, 726 F.2d 584, 587 (9th Cir.1984) (when indictment alleged defendant took money from one partner, while proof showed he got it from the other, variance did not affect substantial rights of the parties) (quoting United States v. Kaiser, 660 F.2d 724, 730 (9th Cir.1981) (government's failure in indictment to connect one or more of the defendants to a conspiracy not a variance which affected substantial rights of the parties), cert. denied, 455 U.S. 956 (1982), overruled on other grounds, United States v. DeBright, 730 F.2d 1255 (9th Cir.1984) (en banc)).
 
 
 26
 In this case, in the second superceding indictment, the government in Count 1 charged Winzer with distribution of approximately 2.4 grams of cocaine base on or about October 23, 1992. The alleged transaction involving 2.4 grams of cocaine base occurred at approximately 2:00 p.m. on October 23, 1992. Winzer argues that he did not participate in this transaction and that the evidence at trial did not support his conviction for distributing 2.4 grams of cocaine base, since the government's evidence at trial supporting Count 1 involved a sale of approximately 3.3 grams of cocaine base at 8:00 p.m. on October 23, 1992. The indictment, however, referred only to the date and the distribution of 2.4 grams. Winzer did not request a bill of particulars.
 
 
 27
 Winzer's argument fails. The indictment did not charge Winzer with a transaction occurring at any particular time. The only actual variance was in the amount of drugs distributed. We have held that "[t]he variances between the amounts of cocaine charged in the indictment and the amounts proved at trial did not prejudice [the defendant's] substantive rights and so were not fatal to the prosecution's case." United States v. LeMaux, 994 F.2d 684, 690 (9th Cir.1993) (noting that variance is not prejudicial if indictment is sufficiently explicit to inform defendant of charges against him). We have also stated that "[s]ection 841(a) does not specify drug quantity as an element of the substantive offense of possession with intent to distribute; quantity is instead relevant to the penalty provisions of section 841(b) and is a matter for the district court at sentencing." United States v. Sotelo-Rivera, 931 F.2d 1317, 1319 (9th Cir.1991), cert. denied, 112 S.Ct. 1186 (1992). Thus, the government's listing 2.4 grams of cocaine base in the indictment, rather than 3.3 grams, did not prejudice Winzer's substantive rights, as he had sufficient information of the charges against him. In addition, the government introduced at trial the testimony of Agent Hart which provided sufficient evidence to support Winzer's conviction for distributing 3.3 grams of cocaine base on October 23, 1992 at approximately 8:00 p.m.
 
 V
 
 28
 Winzer argues that the government failed to adequately prove the prior conviction, which established the basis for a 10-year enhancement of his sentence. Winzer's contention that the government must prove under 21 U.S.C. Sec. 841(b)(1)(A) that a prior conviction is final by introducing the entry of judgment and conviction is without merit. In this case, the government filed an information to establish the prior conviction, as required by 21 U.S.C. Sec. 851(a). The government later filed a supplemental attachment to the information to establish the prior conviction, which included (1) the complaint against Winzer; (2) the minute order and order of probation reflecting Winzer's guilty plea and sentence; (3) the transcript of the February 5, 1991 proceedings of Winzer's change of plea; and (4) the transcript of the March 19, 1991 proceedings of the judgment and sentence.
 
 
 29
 This information is sufficient to establish Winzer's prior conviction and to provide him with notice thereof, and Winzer did not deny or challenge this conviction pursuant to the procedures in Sec. 851. See United States v. Garcia, 954 F.2d 273, 276-77 (5th Cir.1992) (defendant did not comply with statutory prerequisites to challenging prior conviction and district court's substantial compliance with Sec. 851 procedures sufficient). Thus, the district court did not err by enhancing his sentence 10 years under Sec. 851 based on his prior state conviction.
 
 VI
 
 30
 Winzer argues that his sentence is unconstitutional because it is disproportionate and cruel and unusual. While Winzer's sentence is harsh, it is not unconstitutional. See Harmelin v. Michigan, 111 S.Ct. 2680, 2701-02 (1991); United States v. Van Winrow, 951 F.2d 1069, 1071-73 (9th Cir.1991).
 
 
 31
 AFFIRMED IN PART, REVERSED IN PART, and REMANDED.
 
 BRUNETTI, Circuit Judge, dissenting in part:
 
 32
 The majority in Part III concludes that no rational juror could find beyond a reasonable doubt that there was a gun in Winzer's house at the time of the drug sale. I disagree and dissent to the majority's reversal of Winzer's conviction on Count 6 in Part III.
 
 
 33
 Jenner, Winzer's brother-in-law, testified that he had seen Winzer target shooting with the shotgun at his mother's ranch in September or October 1992. Jenner also stated that he helped Winzer tape the stock of the gun. Finally, Jenner testified that on October 23, 1992[1], when he went to Winzer's home to make a controlled buy of crack cocaine from Winzer, he saw the butt of the gun sticking out from under some clothes on the closet floor of Winzer's bedroom. The government found the unregistered shotgun when it searched the Winzers' personal property at the storage facility on November 18, 1992.
 
 
 34
 Although Jenner's credibility was questioned and YeVonne Winzer testified that there were no guns in her home, any rational juror could have concluded that the government proved the elements of Sec. 924(c)(1) beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979) ("[T]he critical inquiry on review of the sufficiency of the evidence to support a conviction ... is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.") (emphasis in original and citations omitted). The credibility of the witnesses was for the jury to determine. See United States v. Vaccaro, 816 F.2d 443, 454 (9th Cir.) ("The credibility of witnesses and the weight accorded the evidence are questions for the jury that are not reviewable."), cert. denied, 484 U.S. 914 (1987); Davis v. United States, 327 F.2d 301, 305 (9th Cir.1964) ("court cannot second-guess a trier of fact who has heard the testimony, scrutinized the witnesses, and noted their demeanor and behavior on the witness stand and had the opportunity ... to place his [or her] reliance on those whom he [or she] believes to have been telling the truth") (citations and internal quotations omitted).
 
 
 35
 Based on the evidence that the shotgun was in Winzer's bedroom when Winzer sold cocaine to Jenner, any rational juror could have reasonably found that Winzer "used" the gun because it emboldened him in his drug trafficking activity. See United States v. Torres-Medina, 935 F.2d 1047, 1050 (9th Cir.1991) (firearm available if its physical proximity to defendant during the crime or the arrest supports the inference that it emboldened him to commit the underlying offense or to resist arrest). Any rational juror could also have concluded that the presence of the gun in Winzer's home facilitated the drug operations and protected the cocaine located at his home. See United States v. Torres-Rodriguez, 930 F.2d 1375, 1385 (9th Cir.1991) (sufficient evidence supported Sec. 924(c)(1) conviction when loaded Magnum, heroin, drug paraphernalia, and large amounts of cash found at defendant's residence since jury could infer that possession of gun intended to facilitate drug operations and protect contraband on premises); see also United States v. Keeper, 977 F.2d 1238, 1241 (8th Cir.1992) (sufficient evidence supported Sec. 924(c)(1) conviction based on mere presence and availability of firearms at apartment where crack cocaine and cash discovered).
 
 
 36
 The majority usurps the function of the jury by making factual and credibility determinations and attempting to patch together with faulty reasoning distinct and separate events--the October 22, 1992 observation of the gun during the drug sale at Winzer's home and the November 4, 1992 search of Winzer's home which revealed no gun. The majority finds that the gun could not have been in Winzer's home on October 22, 1992 during the drug sale, because it was not found with the drugs and cash during the November 4, 1992 search. As detailed above, Jenner's testimony was sufficient for any rational trier of fact to convict Winzer under Sec. 924(c)(1). See United States v. Larios, 640 F.2d 938, 940 (9th Cir.1981) ("The testimony of one witness, even that of an informant, is sufficient to uphold a conviction."). The majority improperly supplants its own credibility determinations and inferences from the evidence for those of the jury. See Jackson, 443 U.S. at 319 (function of jury to weigh evidence, resolve conflicts, and draw inferences). Accordingly, I would affirm Winzer's conviction under Sec. 924(c)(1).
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Jenner testified that he saw the shotgun in Winzer's home on October 23, 1992. Based on my review of the record, the date that Jenner went to Winzer's home to purchase cocaine and saw the shotgun was October 22, 1992