Filed 6/5/18

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JOSE EPIFANIO GARCIA,<br><br>    Defendant and Appellant. | D073825<br><br>(San Diego County<br>Super. Ct. No. SCN340086)<br><br>ORDER STRIKING<br>*WENDE/ANDERS* BRIEF FILED<br>BY COUNSEL FOR APPELLANT |

THE COURT:*

A jury convicted Jose Epifanio Garcia[1] of attempted voluntary manslaughter and

assault with a semiautomatic firearm (Pen. Code, §§ 664, 192, subd. (a), 245, subd. (b)),[2]

and Jose filed an appeal. For reasons we discuss, the *Wende/Anders*[3] brief filed by Jose's

---

\*     This matter has been considered by Justices Benke, O'Rourke, and Irion. Justice Irion concurs in parts I and II and concurs in the result in part III.

[1]     Jose was jointly tried with his brother, Salvador. For the sake of clarity, we refer to the Garcia brothers by their first names.

[2]     Further unspecified statutory references are to the Penal Code.

[3]     *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) and *Anders v. California* (1967) 386 U.S. 738 (*Anders*).

appointed appellate counsel is stricken. Counsel is ordered to file a new brief in conformity with *Wende, supra*, 25 Cal.3d 436, or file a merits brief.

FACTUAL AND PROCEDURAL BACKGROUND

Jose is Salvador's older brother. Salvador insulted the sister of victim Gerardo M., causing animosity between Salvador and Gerardo. A few months later, when Salvador and Gerardo next saw each other, the unresolved animosity between them led to a physical fight between two groups of men in the parking lot of Gerardo's apartment complex. One group included Jose, Salvador, and two of their friends. The other group included Gerardo, his cousin, and friend, Erik R. Armed with guns, Jose and Salvador approached Gerardo's unarmed group. Erik, who was a former gang member, suggested that Jose's group put their guns away and fight "one on one." Members of Jose's group then began fist fighting with members of Gerardo's group.

During the fight, Salvador pointed a gun at Erik's head. Out of concern for Erik's life, Gerardo threw a beer bottle at Salvador's head, but missed. The fighting continued, Gerardo got shot in the torso, and fell to the ground. While Gerardo was down on his back, Salvador and his friend punched him. Next, Salvador pulled out a gun from his waistband area and shot Gerardo in the face. At that point, Gerardo's father stopped the fight. Salvador pointed his gun at several of Gerardo's family members while threatening to shoot. Jose and Salvador fled the area together.

Gerardo, who survived his gunshot wounds, and his sister identified Salvador as the shooter. Gerardo identified Jose as a person who had been holding a gun during the fight.

2

Jose and Salvador were charged with attempted murder (§§ 664, 187, subd. (a)) and assault with a semiautomatic firearm (§ 245, subd. (b)). During their joint trial, the People's theory, with respect to attempted murder, was that (1) Salvador shot Gerardo; and (2) Jose intended to aid and abet Salvador with committing assault with a semiautomatic firearm, a natural and probable consequence of which was attempted murder. The court instructed the jury accordingly. The court also instructed the jury on the lesser included offense of attempted voluntary manslaughter based on heat of passion/sudden quarrel and imperfect self-defense.

After deliberating, the jury convicted Jose of attempted voluntary manslaughter and assault with a semiautomatic firearm. (§§ 664, 192, subd. (a), 245, subd. (b).) The court sentenced him to a prison term of nine years for assault with a semiautomatic firearm.[4] Jose filed a timely appeal.[5]

APPELLATE PROCEEDINGS

Jose's appointed appellate counsel submitted a brief on Jose's behalf "pursuant to the procedures outlined in [*Wende, supra*,] 25 Cal.3d 436 and *Anders*[, *supra*,] 386 U.S. 738."

The discussion section of the brief states as follows:

---

[4]    The court stayed his sentence on attempted voluntary manslaughter under section 654.

[5]    Jose's appeal initially proceeded under the same case number as Salvador's appeal. On the court's own motion, we bifurcated the appeals and assigned this appeal a different case number.

"When counsel files a brief which sets forth a summary of the proceedings and facts with citations to the transcript, but raises no specific issues, the Court of Appeal must conduct a review of the entire record to determine whether the record reveals any issues which would, if resolved favorably to the appellant, result in reversal or modification of the judgment. ([*Wende, supra,*] 25 Cal.3d 436; *People v. Feggans* (1967) 67 Cal.2d 444; *Anders*[*, supra,*] 386 U.S 738 . . . ; see also *People v. Johnson* (1981) 123 Cal.App.3d 106, 109-112.)"

"This brief, with the attached declaration of appellate counsel, is filed in accordance with the procedures outlined in [*Wende, supra,*] 25 Cal.3d 436, and *People v. Feggans, supra*, 67 Cal.2d 444, as interpreted by the court in *People v. Johnson, supra*, 123 Cal.App.3d 106. The following information about **claims appearing in the record** is provided pursuant to *Anders*[*, supra,*] 386 U.S 738, to assist the court in conducting its independent review of the record." (Boldface added.)

The brief then identifies general and specific "claims" appearing in the record. Under the claim headings are citations to the clerk's transcripts and/or reporter's transcripts, and each claim is accompanied by string citations listed in no particular order, as follows:

"**A.      ERROR FOR FAILURE TO SEVER APPELLANT'S CASE FROM THAT OF HIS BROTHER SALVADOR?**

"(CT 1:209, 215-216, RT 1:114-116, RT 16:1260; Pen. Code, § 1098; *Zafiro v. United States* (1993) 506 U.S. 534, 544; *People v. Thompson* (2016) 1 Cal.5th 1043, 1081; *People v. Homick* (2012) 55 Cal.4th 816, 850; *People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 41; *People v. Burney* (2009) 47 Cal.4th 203, 236-237; *Williams v. Superior Court* (1984) 36 Cal.3d 441, 447-448; *People v. Massie* (1967) 66 Cal.2d 899, 917; *People v. Cummings* (1993) 4 Cal.4th 1233, 1287; *United States v. Tootick* (9th Cir. 1991) 952 F.2d 1078, 1082; *United States v. Romanello* (5th Cir. 1984) 726 F.2d 173, 174 *People v. Boyde* (1988) 46 Cal.3d 212, 231; *People v. Jackson* (1996) 13 Cal.4th 1164, 1208-1209; *People v. Souza* (2012) 54 Cal.4th 90, 110-111; *People v. Greenberger* (1997) 58 Cal.App.4th 298, 343; *People v. Garcia* (2008) 168 Cal.App.4th 261, 280; *People v. Hardy* (1992) 2 Cal.4th 86, 168; *United States v. Sherlock* (9th

4

Cir. 1989) 962 F.2d 1349, 1362; *United States v. Buena Lopez* (9th Cir. 1993) 987 F.2d 657, 661.)

"**B.     SUFFICIENCY OF EVIDENCE RE AIDING AND ABETTING?**

"(*Juan H. v. Allen* (9th Cir.2005) 408 F.3d 1262, 1277-1278; *People v. Nguyen* (1993) 21 Cal.App.4th 518, 531; *People v. Covarrubias* (2016) 1 Cal.5th 838, 903; *People v. Garcia* (2008) 168 Cal.App.4th 261, 272-273; *People v. Campbell* (1994) 25 Cal.App.4th 402 (30 Cal.Rptr.2d 525, 529); *People v. Hickles* (1997) 56 Cal.App.4th 1183, 1194; *People v. Laster* (1997) 52 Cal.App.4th 1450, 1463-1466; *People v. Joiner* (2000) 84 Cal.App.4th 946, 967; *People v. Hill* (1946) 77 Cal.App.2d 287, 293-294; *People v. Olguin* (1994) 31 Cal.App.4th 1355, 1376; *People v. Godinez* (1992) 2 Cal.App.4th 492, 499; *People v. Favor* (2012) 54 Cal.4th 868, 879-880.)

"**C.     DID APPELLANT SUFFER PREJUDICE AS A RESULT OF AN IMPEACHMENT GANG PRIOR AS TO CODEFENDANT SALVADOR?**

"(RT 9:808-812, CALCRIM No. 316 [evidence limited], Evid. Code, § 352; *People v. Wheeler* (1992) 4 Cal.4th 284, 297, fn. 7; *People v. Heckathorne* (1988) 202 Cal.App.3d 458, 462-463; *People v. McClellan* (1969) 71 Cal.2d 793, 809; *People v. Castro* (1985) 38 Cal.3d 301, 316; *In re Wing Y.* (1977) 67 Cal.App.3d 69, 76-79; *People v. Tassell* (1984) 36 Cal.3d 77, 88; *People v. Williams* (1997) 16 Cal.4th 153, 193; *People v. Maestas* (1993) 20 Cal.App.4th 1482, 1495; *People v. Perez* (1981) 114 Cal.App.3d 470, 479; *People v. Champion* (1995) 9 Cal.4th at 879, 922; *McKinney v. Rees* (9th Cir. 1993) 993 F.2d 1378, 1381 and fn. 2; *Henry v. Estelle* (9th Cir. 1993) 993 F.2d 1423, 1427-1428.)

"**D.     ERROR NOT TO GIVE DEFENSE-REQUESTED CALCRIM NOS. 224 *AND* 225?**

"(RT 11:1018-1019; CALCRIM No. 223 [direct/circumstantial evidence] and CALCRIM No. 224 [circumstantial evidence] (CT 1:112-113); *People v. McKinnon* (2011) 52 Cal.4th 610, 676; *People v. Samaniego* (2009) 172 Cal.App.4th 1148, 1170; *People v. Rogers* (2006) 39 Cal.4th 826, 885; *People v. Cole* (2004) 33 Cal.4th 1158, 1222; *People v. Brown* (2003) 31 Cal.4th 518, 562; *People v.*

*Marshall* (1996) 13 Cal.4th 799, 849; *People v. Hughes* (2002) 27 Cal.4th 287, 347.)

"**E.     WERE AIDING AND ABETTING/NATURAL AND PROBABLE CONSEQUENCES INSTRUCTIONS PROPER?**

"(CT 1:134-137; *People v. Beeman* (1984) 35 Cal.3d 547, 560-56; *People v. McCoy* (2001) 25 Cal.4th 1111, 1117-1118; *People v. Croy* (1985) 41 Cal.3d 1, 12, fn. 5; *People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 107-109; *People v. Patterson* (1989) 209 Cal.App.3d 610, 614; *People v. Boyd* (1990) 222 Cal.App.3d 541, 557 fn. 14; *In re Michael T.* (1978) 84 Cal.App.3d 907, 911.)

"**F.     WERE ALL RELEVANT LESSER-INCLUDED OFFENSES GIVEN?**

"(CT 1:131 [general instruction]; 139 [heat of passion/sudden quarrel]; CT 1:141 [imperfect self-defense]; *People v. Gutierrez* (2003) 112 Cal.App.4th 704, 708); CT 1:145 [assault with a firearm]; CT 1:147 [simple assault]; CT 1:149 [brandishing] (Pen. Code, § 417; *People v. Wilson* (1967) 66 Cal.2d 749, 764; *People v. Carmen* (1951) 36 Cal.2d 768, 774; *People v. Huynh* (2002) 99 Cal.App.4th 662, 677-678; Pen. Code, § 663; *People v. Prettyman* (1996) 14 Cal.4th 248, 267; *People v. Woods* (1992) 8 Cal.App.4th 1570, 1586-1588.)

"**G.     INCONSISTENT VERDICTS/SUFFICIENT EVIDENCE - (MOTION FOR ACQUITTAL – MOTION FOR NEW TRIAL)**

"(CT 1:209, 212-215, RT 9:874-875, RT 16:1258-1269; *United States v. Powell* (1984) 469 U.S. 57; *People v. Lewis* (2001) 25 Cal.4th 610, 656; *People v. Palmer* (2001) 24 Cal. 4th 856, 860-861; *People v. Chagolla* (1983) 144 Cal.App.3d 422, 428-429*; People v. Santamaria, supra*, 8 Cal. 4th at p. 911; *People v. Polowicz* (1992) 5 Cal.App.4th 1082, 1089; *People v. Pahl* (1991) 226 Cal. App. 3d 1651, 1656; *People v. Miranda* (2011) 192 Cal.App.4th 398, 405; Count 2:  Assault with semiautomatic weapon:  Pen. Code, § 245, subdivision (b); CALCRIM No. 875, CT 1: 143-146 [definition of firearm vs. semiautomatic]; Pen. Code, § 17140; *People v. Dokins* (2015) 241 Cal.App.4th 1179, 1184; *In re Jorge M.* (2000) 23

Cal.4th 866, 874, fn. 4; *People v. Lawley* (2002) 27 Cal.4th 102, 132; *People v. Bassett* (1968) 69 Cal.2d 122, 141.)

"**H.     CAN VOLUNTARY MANSLAUGHTER EVER BE A NATURAL AND PROBABLE CONSEQUENCE OF A MISDEMEANOR LIKE SIMPLE ASSAULT OR BRANDISHING A WEAPON?**

"(RT 11:1023-1027; CT 1:132, CALCRIM No. 252 [aiding and abetting "requires a specific intent or mental state]; CT 1:136, CALCRIM No. 402 [aider and abettor must be found guilty of offense triggering non-target charged offense]; *People v. Canizalez* (2011) 197 Cal.App.4th 832, 854; *People v. Edwards* (2015) 241 Cal.App. 4th 213, 275 [depub.]; *People v. Gonzales and Soliz* (2011) 52 Cal.4th 254, 299-300 [simple assault]; *People v. Montes* (1999) 74 Cal.App.4th 1050, 1054-1055 [simple assault and breach of the peace for fighting in public]; *People v.Chui* (2014) 59 Cal.4th 155, 164; *People v. Favor* (2012) 54 Cal.4th 868, 872; *People v. Huynh* (2002) 99 Cal.App.4th 662, 681; *People v. Flores* (2016) 2 Cal.App.5th 855, 866; *People v. King (*1938) 30 Cal.App.2d 185, 200*; People v. Lucas* (1997) 55 Cal.App.4th 721, 732-733; *People v. Medina* (2009) 46 Cal.4th 913, 922-923; *People v. Butts* (1965) 236 Cal.App.2d 817, 836; *People v. Hickles* (1997) 56 Cal.App.4th 1183, 1197.)

"**I.     DID THE COURT ABUSE ITS DISCRETION BY SENTENCING APPELLANT, A MERE AIDER AND ABETTOR, TO AN UPPER TERM OF 9 YEARS?**

"(RT 16:1286-1287, *Williams v. New York* (1949) 337 U.S. 241, 247; *United States v. Barker* (9th Cir. 1985) 771 F.2d 1362, 1365*; People v. Sandoval* (2007) 41 Cal.4th 825, 847; *People v. Black* (2007) 41 Cal.4th 799, 817.)"

Although counsel presented the foregoing list of "claims," she states in a declaration

attached to the brief that she has thus far not "uncovered any arguable appellate issues."[6]

---

6     We notified Jose that his counsel filed a *Wende* brief stating no arguable issues could be found, and granted him 30 days to file any supplemental brief he deemed necessary.  Jose did not file any supplemental brief.

7

## COURT'S CONCERNS WITH COUNSEL'S BRIEF

Because of the nature of the claims raised by counsel, this court could not unequivocally discern whether counsel was presenting arguable appellate issues for our adjudication. For example, claim E. asks, "Were aiding and abetting/natural and probable consequences instructions proper?" Counsel further asks in claim I., "Did the court abuse its discretion by sentencing appellant, a mere aider and abettor, to an upper term of 9 years?" Since the term "claim" generally means to demand or assert as one's own right,[7] we requested supplemental briefing, asking directly of Jose's counsel what she meant by describing the issues as " 'claims' . . . i.e., what is a 'claim'? "

In response, counsel stated: "The use of the word 'claim' is in compliance with this court's policy of requiring an *Anders* 'listing' to assist the court in its review."

We remain concerned about the propriety of counsel's brief. There is no court policy requiring counsel to present claims in a *Wende* brief. Moreover, counsel did not directly answer our request that she explain the meaning behind her use of the phrase "claims appearing in the record." We still do not fully understand what, exactly, Jose's counsel is requesting that we do with the claims, or demands, she has set forth.

It is possible that counsel was following the guidance provided to all appointed counsel panel attorneys by Appellate Defenders, Inc. (ADI), a nonprofit law firm that administers the appointed counsel system for the California Court of Appeal, Fourth Appellate District. ADI disseminates an appellate practice manual (ADI, Appellate

---

[7] Black's Law Dict. (10th ed. 2014) p. 301, col. 2. "Claim" also means to state "that something yet to be proved is true."

8

Practice Manual (2d Ed., rev. Sept. 2017); Manual) as a guide to appointed counsel, and the Manual includes a section on the filing of *Wende/Anders* briefs.  (Manual, § 4.77 et seq.)  The Manuel provides:

> "A question of some disagreement is whether a no-issue filing should describe the issues counsel considered.  [*Anders, supra*,] 386 U.S 738, 744-745, held counsel must file a 'brief referring to anything in the record that might arguably support the appeal' and pointed out such a brief would 'induce the court to pursue all the more vigorously its own review because of the ready references not only to the record, but also to the legal authorities as furnished it by counsel.'  In *Smith v. Robbins* (2000) 528 U.S. 259 [(*Smith*)], however, the United States Supreme Court held listing possible issues is not invariably required by the Constitution, if other safeguards are in place.

> "Some courts have strong preferences one way or the other as to the listing of issues, and counsel should naturally heed those. Some courts indifferently leave the matter to counsel's discretion, and some are not clear one way or another.  (See, e.g., *People v. Kent* (2014) 229 Cal.App.4th 293 [Fourth Dis., Div. 3: encouraging listing of issues and disagreeing with since-withdrawn opinion from another panel of same court criticizing that practice].)

> "ADI for the most part encourages listing of issues.  It is a way of stimulating and organizing counsel's thoughts, suggesting issues to the Court of Appeal it might not otherwise consider, and demonstrating counsel's efforts to the court, the project, and the client."  (Manual*, supra*, § 4.79, p. 44.)[8]

Three things at once stand out.  First, the Manual states that there is "disagreement" (presumably among Supreme Court opinions), as to whether an *Anders* listing of issues in a *Wende* brief is constitutionally required.  The Manual indicates that

---

[8]    The Manual is publicly available online, free of charge.  The most recent version of the Manual can be viewed at http://www.adi-sandiego.com/panel/manual.asp (last visited May 23, 2018).

*Anders* requires a listing, while *Smith, supra*, 528 U.S. 259, does not. Second, the Manual observes there is wide variation among California appellate courts as to how and when *Anders* issues may be raised in a "no-issue filing." Thus, per the Manual, there is no uniformity in California with respect to providing a list of *Anders* issues. Third, given the lack of definitive law on the practice of listing *Anders* issues, the Manual encourages appellate counsel to list issues, ranging from those that help to organize counsel's thoughts to those that might otherwise be overlooked by the court, all of which ADI believes will demonstrate counsel's efforts to the court, ADI, and the client.

We agree there is no definitive statement of law regarding whether *Anders* issues may be included in a *Wende* brief or whether the practice is uniformly beneficial to appellants. In this case, we see no legitimate purpose served by the presentation of *Anders* issues, where from counsel's listing of "claims," it cannot be discerned which claims counsel deems worthy of further analysis or which were merely nascent, "organizational" issues. Therefore, as we explain, we strike the *Wende/Anders* brief filed in this case.

## I

We first state what we believe is clear: there is no constitutional requirement that issues arguably supporting an appeal be listed in a *Wende* brief. That is, neither the United States Supreme Court nor the California Supreme Court has ever held that a listing of *Anders* issues is required in a *Wende* brief. Moreover, we do not perceive any inconsistency on this point of law.

10

In *Smith*, the court clarified and emphasized that the *Anders* framework, including the step in which counsel lists arguable issues in support of his or her motion to withdraw, was only a "suggestion." (*Smith, supra*, 528 U.S. at pp. 273-274.) The *Smith* court noted that *Anders* "sketched" out merely one method of protecting an indigent defendant's constitutional right to appellate counsel, and individual states are free to adopt different procedures "so long as those procedures adequately safeguard a defendant's right to appellate counsel." (*Smith*, at pp. 265, 272-276.) Thus, *Anders* does not require any state's procedure for treating frivolous appeals to include a step of presenting arguable legal issues. (*Smith*, at pp. 272-273.)

## II

Having concluded that an *Anders* "listing" is not constitutionally required in all states, the question arises whether an *Anders* listing is a required step in California's *Wende* process. We have found no case holding that listing *Anders* issues is a requirement in California's *Wende* procedure. On the contrary, every relevant authority we have consulted holds that full compliance with the *Wende* procedure alone sufficiently safeguards an indigent's right to effective counsel. (E.g., *Smith, supra*, 528 U.S. at p. 284 ["It is enough to say that the *Wende* procedure . . . affords adequate and effective appellate review for criminal indigents. Thus, there was no constitutional violation in this case . . . ."]; *People v. Kelly* (2006) 40 Cal.4th 106, 118 (*Kelly*) [*Wende* is a "modified procedure [from *Anders*] to ensure an indigent criminal defendant's right to effective assistance of counsel."].)

11

The only remaining question is whether an *Anders* listing is beneficial to a reviewing court and more so, to the interests of appellants seeking review. We conclude the answer is, it can be (see *People v. Kent* (2014) 229 Cal.App.4th 293, 296), but not always.

Providing a list of *Anders* issues is a problematic endeavor. As three dissenting justices in *Anders* pointedly observed, "[t]he Court today . . . imposes upon appointed counsel who wishes to withdraw from a case he deems 'wholly frivolous' the requirement of filing 'a brief referring to anything in the record that might arguably support the appeal.' *But if the record did present any such 'arguable' issues, the appeal would not be frivolous and counsel would not have filed a 'no-merit' letter in the first place.*" (*Anders, supra*, 386 U.S. at p. 746 (dis. opn. of Stewart, J.), italics added.)

Many years later, the *Smith* court, in approving California's *Wende* procedure and contrasting it with Wisconsin's procedure discussed in *McCoy v. Court of Appeals, Dist. 1* (1988) 486 U.S. 429, pointed out the weaknesses inherent in the *Anders* process. The *Smith* court addressed the concerns of the *Anders* dissent, and the criticism of others, that the *Anders* procedure is incoherent and impossible to follow: "Those making this criticism point to our language in *Anders* suggesting that an appeal could be both 'wholly frivolous' and at the same time contain arguable issues, even though we also said that an issue that was arguable was 'therefore not frivolous.' [Citation.] In other words, the *Anders* procedure appears to adopt gradations of frivolity and to use two different meanings for the phrase 'arguable issue.' The *Wende* procedure attempts to resolve this

12

problem as well, by drawing the line at frivolity and by defining arguable issues as those that are not frivolous." (*Smith, supra*, 528 U.S. at p. 282, fn. omitted.)

The *Smith* court also addressed the related ethical problems—created by *Anders* and arguably exacerbated by the Wisconsin procedure discussed in *McCoy*—from counsel's having to characterize an appeal as frivolous and at the same time set forth arguable issues. The court noted that, under *Wende*, these ethical problems are mitigated because appellant's counsel is not required to describe the appeal as frivolous or raise specific legal issues. (*Smith, supra*, 528 U.S. at pp. 281-282, 283-284.)

The Supreme Court observed that listing *Anders* issues comes with a potential downside—the use of scarce resources and diverting a Court of Appeal from more meritorious issues—avoided under the *Wende* procedure. (*Smith, supra*, 528 U.S. at pp. 282, fn. 13, 283-284.) Unlike the procedure in *McCoy*, in which the court reviews only parts of the record cited by counsel in support of the "arguable" issues raised, the *Wende* procedure requires "a more thorough treatment of the record by both counsel and court." (*Smith*, at p. 283.) The *Smith* court noted that a *McCoy*-like process does assist the reviewing court "by directing it to particular legal issues; as to those issues, this is presumably a good thing. *But it is also possible that bad judgment by the attorney in selecting the issues to raise might divert the court's attention from more meritorious, unmentioned, issues.*" (*Id.* at p. 284, italics added.) Moreover, as to the issues that counsel raises in a *McCoy*-type brief, the one-sided briefing on why those issues are frivolous may predispose the court to reach the same conclusion. "*The Wende procedure reduces these risks, by omitting from the brief signals that may subtly undermine the*

13

*independence and thoroughness of the second review of an indigent's case."* (*Ibid.*, italics added; see *Kelly, supra*, 40 Cal.4th at p. 119 [summarizing *Wende* procedure and highlighting "the importance of the appellate court's responsibility in *Wende* appeals to perform a thorough review of the record"].)

CONCLUSION

The case before us demonstrates a misuse of the *Anders* process. As we have discussed, listing *Anders* issues is not a mandatory step in California's *Wende* procedure, which defines an arguable issue as one that is not frivolous. Further, an *Anders* listing is not necessarily helpful to the reviewing court or to an appellant. The laundry list of nine "claims" or issues included in the *Wende/Anders* brief filed here illustrates the difficulty of grafting an "*Anders* list" into California's *Wende* procedure. Some "claims" are quite specific and phrased in the form of arguable issues, while others are broad and academic with no apparent application in this case. Counsel gives us scant assistance by her inclusion of unorganized, voluminous string citations.

Accordingly, we strike the *Wende/Anders* brief filed in this appeal and direct appellate counsel, within 20 days of the date of this order, to either file a *Wende* brief devoid of so-called "claims" appearing in the record (*Anders* issues), or file a brief on the merits containing fully developed arguments on specific claims or issues. Any merits

14

brief will be treated as an opening brief and must be filed according to the California

Rules of Court governing appeals.


                                                                    BENKE, Acting P. J.

Copies to:  All parties